# Lyon *v.* The State.

### *Indictment for Larceny of Part of Outstanding Crop.*

1. *Indictment; sufficiency of.*—McDowell *v.* The State, *ante*, p. 172, followed as to the sufficiency of an indictment which, for want of a specific allegation as to the time of the commission of the offense, does not disclose affirmatively that the act charged, was done subsequent to the passage of a statute making it a punishable offense.

2. *Arrest of judgment; what not ground for.*—Judgment will not be arrested, because the christian name of the owner of the stolen property was designated by initials only, instead of being given in full; especially where the prosecutor wrote his name as set forth in the indictment, and was as well known when designated in that way, as when his christian name was given in full.

3. *Larceny of part of outstanding crop; proof, what necessary to constitute.* One hired to pick cotton, who after gathering it converts it to his own use, can not be convicted of the statutory offense of " larceny of part of outstanding crop," unless at the time of gathering it, he had the present felonious intent to steal it; and where he had the right to retain possession, until the cotton was weighed at the close of the day, the mere fact that after picking the cotton he secreted it, will not of itself justify the finding that he had the felonious intent to steal it, at the time he was picking it.

APPEAL from Perry Circuit Court.

Tried before Hon. GEORGE H. CRAIG.

The appellant was convicted under an indictment found on the 22d day of March, 1878, which charged that he " feloniously took and carried away, twenty pounds of cotton, a part of an outstanding crop of cotton, the property of B. A. Rush," &c.

On the trial, the State introduced one Benjamin A. Rush, who testified that he was the person named in the indictment, as the owner of the property alleged to have been stolen, and he was known as Ben or B. A. Rush, and that he signed his name B. A. Rush. This witness testified that he employed the defendant to pick cotton for him, and agreed to give him a certain amount per hundred pounds—the cotton so picked to be weighed at the close of each day, and to remain in the possession of the defendant until weighed ; that under said contract or agreement the defendant picked cotton one entire day, in the field of the witness, and that about 11 o'clock of said day, the father of defendant, who was at the time picking cotton with him, and with other hands for witness, asked witness, in the presence of the de-

[Lyon v. The State.]

fendant, if he and defendant could go to another part of said cotton field and pick, to which witness consented, and defendant and his father went to pick in the place mentioned, which was near a skirt of woods, and near the house where the defendant lived, and that no one else was picking cotton at or near this place. This witness rode up to the place where defendant was picking, and when within about one hundred yards, saw defendant, who had filled the sack he was picking in, go with it out of the field into the skirt of woods, and the witness did not see defendant after he entered the woods, but soon after saw him get over the fence near the house where he lived, and soon after defendant returned with the sack empty, and continued to pick cotton during the remainder of said day, and all this occurred in Perry county, and within twelve months before the finding of this indictment. The defendant introduced his father, Henry Lyon, as a witness, who testified that he picked cotton with defendant all day, and that he did not see him take any cotton from the field. The defendant also proved a good character for honesty. Rush being recalled by the State testified that he knew the character of Henry Lyon, and that he would not believe him on oath. This was substantially all the testimony.

The court, of its own motion, charged the jury, that "if the evidence in the case satisfied them, beyond a reasonable doubt, that the defendant feloniously took and carried away cotton, a part of an outstanding crop of cotton, the property of B. A. Rush, with the intention of converting said cotton to his own use or depriving the owner of it, in Perry county, and before the finding of the indictment in this case, then the defendant would be guilty as charged in the indictment; that the fact that he was employed to pick the cotton for B. A. Rush, would not excuse him, if he had the intention to steal it while severing from the stalk or picking it, and with such intention did pick said cotton and feloniously take and carry it away, with the intention to convert it to his own use or deprive the owner of it."

The defendent requested separately the following written charges: 1st. "If the jury believe that the defendant came legally into the possession of the cotton alleged in the indictment to have been stolen, they must acquit the defendant." 2d. "If the jury believe the evidence, the defendant had the right to pick the cotton and take it into possession; and if he had the right to pick it and take it into possession, then the cotton ceased to be a part of the outstanding crop, and

(15)

the defendant can not be convicted of the larceny of a part of an outstanding crop of cotton under this indictment." 3d. " If the defendant had the right to pick the cotton and take it into possession, and if at the time of the picking and taking into possession, he had no intent to steal the cotton, and such intent arose after that time, then the defendant can not be guilty of larceny, but may be of embezzlement." 4. " If the jury believe from the evidence that the defendant came into possession of the cotton alleged to have been stolen by him, by virtue of his employment, the jury can not convict him." 5. " If the jury believe from the evidence that Mr. Rush employed this defendant to pick cotton for him, and agreed to give him so much per hundred, and this defendant took a part of the said cotton before it was weighed, he can not be convicted of larceny." 6. "If the jury believe that the christian name of Mr. Rush is Benjamin, there is a fatal variance between the indictment and the proof, and the jury can not convict the defendant." 7. " That the cotton was no longer a part of an outstanding crop after it had been picked, and if the intent to steal was formed after the severance, the jury must return a verdict of ' not guilty ;' for in such case the offense was not grand larceny as charged in the indictment."

The court refused to give each of said charges, and the defendant separately excepted to each refusal.

After conviction, the defendant moved in arrest of judgment—1. " Because the indictment in this case alleges that the offense therein described was committed before the finding thereof, but does not show that said offense was committed after the act entitled ' An act to amend section 3706 of the Revised Code of Alabama,' approved February 20, 1875, became the law of this State." 2. " For aught that appears in and by said indictment this defendant may have taken the property therein described before the said act went into force and effect, and became the law of this State." 3. " That the property therein alleged to have been taken, is not described with sufficient certainty." 4. " That said indictment does not set forth the christian name of the owner of the property therein alleged to have been taken, or show that it was to the grand jury unknown."

The court overruled the motion, and sentenced the defendant to two years hard labor for the county.

E. M. VARY, for appellant.—The indictment is fatally defective, because it fails to allege the time when the de-

fendant committed the alleged offense. The defendant was indicted for the larceny of part of a growing crop, which offense was created and made grand larceny and a felony by the act of March 20, 1875. Prior to that time, the severing and carrying off of a part of the outstanding crop was a mere trespass, and this act became the law of this State thirty days after the adjournment of the legislature which enacted it, to-wit, on the 22d day of April, 1875. At common law it was necessary to allege the time at which or within which the offense was committed.—Clarke's Manual, § 2180, and authorities cited; Bishop Crim. Procedure, vol. 1, § 239, *et seq*. Under the statute, it is not generally necessary to allege the time, but the offense may be alleged to have been committed on any day before the finding of the indictment, or generally before the finding of the indictment.—Code of 1876, § 4788. It has been decided by this court that an indictment for a misdemeanor, not alleging the time within which the offense was committed, is *in legal effect* a charge that the offense was committed within twelve months before the indictment was found; or, in other words, it covers the entire time, previous to the finding of the indictment, not within the bar of the statute of limitations, and if the law under which the indictment is found has been in force for a period of time less than the time necessary to perfect the bar of the statute, the indictment is bad.—See 55 Ala. 167; 24 Ala. 672. There is no limitation of time within which a prosecution may be commenced for grand larceny.—Code of 1876, § 4640. Under these principles an indictment like the present, is bad; for it is, in legal effect, a charge that the offense was committed at any time within the life of defendant; and the law under which the indictment is found, has only existed since the 22d of April, 1875. Prior to that time the offense charged did not exist. The owner of the property should have been described in the indictment by his christian name. Such was the rule of the common law, and there is no statute changing the common law in this respect. The case of *Thompson v. State*, 48 Ala. 165, is opposed to rules of common law, and the preponderance of judicial authority, is calculated to induce negligence and carelessness, and should be overruled.—See 53 Ala. 476; Pomeroy's Archbold, vol. 1, p. 245. Charge number seven should have been given. After the cotton was severed, it ceased to be part of an outstanding crop; and if the intent to steal it, was formed after the severance, the offense could not be grand larceny.—See 55 Ala. 116; 54 Ala. 238; 53

[Lyon v. The State.]

Ala. 474. The appellant had the right to the possession of the cotton, until it was weighed; until that time the alleged owner had no right to the possession, and it is immaterial whether the defendant kept the cotton in the field or carried it to his house. The defendant came into the possession of the cotton by virtue of his employment, and was in the legal possession of it at the time of the alleged taking; and there is no proof that he failed to deliver all he picked at the close of the day, as required by his contract. The evidence shows a bailment, and the defendant could not be guilty of the offense charged in the indictment.

H. C. TOMPKINS, Attorney-General, *contra.*—The case of *Molett v. State,* 33 Ala. 409, settles adversely to appellant the objection that the indictment failed to allege the time of the commission of the offense. The point as to the sufficiency of the designation of the owner of the property, by his christian name, was fully considered and decided in the case of *Franklin v. State,* 52 Ala. 414. It was there ruled that the initials were sufficient. The defendant's offense, if any thing, was larceny. He could not have been convicted of embezzlemet upon the facts. He had no property in the cotton, either general or special; nor did he have the use of it. It was, while in the field, in the possession of Mr. Rush, and defendant was a mere servant, to pick and convey it from the field to the cotton-house. It remained in the con-structive possession of the owner, during the whole time. *State v. Self,* 1 Bay, 242; 2 Bish. Crim. Law, 818, 837; 33 Ala. 416.

MANNING, J.—It is charged in this cause, that "before the finding of this indictment," defendant "feloniously took and carried away twenty pounds of cotton, a part of an out-standing crop of cotton, the property of B. A. Rush," &c.

The first ground upon which the motion in arrest of judgment is based—the omission of a limitation to the time, when the offense is alleged to have been committed, to a period subsequent to the enactment of the law creating it—was the subject of consideration in the case of *McDowell v. The State,* *ante p.* 172. And on the authority of that case, we hold the reason assigned insufficient to support the motion.

Nor, under the practice now established and which this court has recognized, though often reprehending it, can we hold that the motion to arrest ought to have prevailed because the christian name of the owner of the cotton involved, was

[Lyon v. The State.]

not set out entire instead of by initials; it being proved that he commonly wrote his name B. A. Rush, and was known by it as well as by the name of Benjamin A. Rush.—*Thompson v. State*, 48 Ala. 165; *Morningstar v. State*, 52 Ala. 407; *Franklin v. The State*, id. 414; *Gerrish v. State*, 53 Ala. 480. In this last case, in reference to the accused himself, as distinguished from one not a party to the cause, we said: "However proper it may be in the hurry of daily life, and unimportant occasions, to write one's own name or the names of others, in the shortest intelligible manner, it is not allowable to do so, in so grave and solemn an instrument, as an indictment by a grand jury under oath, which denounces the person denominated in it as a violator of the law, with the intent to have him sought out from the rest of the community and arrested and brought to punishment. And solicitors and grand jurors ought to be diligent to find out and insert in their indictments the true names of those whom they thereby accuse," (p. 480). It often happens that there are in a community more persons than one of the same surname and whose christian or baptismal names, though different, begin with the same initial letters. And much undeserved reproach and cruel injury might be inflicted, especially after a generation had passed, upon the family of one, by the fact that another of them, had been indicted and convicted of larceny, perjury or some other heinous crime, by a surname and initials which equally well described both. Such evil was prevented by the common law practice of designating the person accused in the indictment, by his place of residence, occupation and station in society, as well as by his true and entire name, when this could be ascertained. And since the former particulars are not now required, and are rarely used, it is only the more important that a grand jury should, in the words of their oath, "diligently inquire" concerning the true christian name of a person to be presented as a criminal, before they indict him by initial letters, because "his name is unknown to" them. The statute says the indictment "must be certain as to the person charged;" and it is a duty to take pains to make it so.—Code of 1876, § 4786 (4113).

The prosecution is under the statute which makes the felonious taking and carrying away of a part of an outstanding crop of cotton, grand larceny; a law designed to repress an offense which had recently become so common and mischievous as greatly to discourage people engaged in agriculture. The defendant was employed to pick cotton from the

[Lyon v. The State.]

stalk by Mr. Rush, at a certain price per hundred pounds,. and was entitled to keep together, the cotton so picked until the close of the day, when it was to be weighed. Having filled the sack into which he put the cotton as he picked it, defendant was seen to go from the field and carry it away to his father's house, about eleven o'clock in the day; and it is on this fact, (omitting circumstances proved), that the charge is founded.

We have heretofore held that inasmuch as the parts of an outstanding crop savor of the realty, instead of being personal chattels—a defendant can not under an indictment like the present, be convicted of petit larceny. And in his excellent argument, counsel for defendant in this cause, insists that since the cotton was picked from the stalk, in the course of defendant's employment to pick it, by the express authority of Rush, the owner, the offense could not have been committed in respect of such cotton,—and that if any offense was committed it was by the taking away of the cotton after its severance and when it had become personalty, for which there could be no punishment under this indictment.

It is true the act complained of was not a trespass, in the ordinary meaning of that word, and that generally larceny is committed by a trespass. In some cases, though, this is not so. In those of bailment, especially, goods of another may be lawfully obtained in bulk or packages for a particular purpose, as for transportation by a carrier, and yet the bailee be guilty of larceny, by separating portions of them from the rest, and disposing of them for his own use. So, one may apply to a keeper of horses to obtain one on hire, and have the horse delivered to him by the owner; still, if the pretended hirer, intended *ab origine*, to get the animal for the purpose of selling him and depriving the owner of his property, and does so soon afterwards, he is guilty of larceny. Though no trespass was committed and he received the horse from the hands of the owner, yet if he contrived so to get. him, *animo furandi*, the taking and carrying away were felonious. And the perfidy of his conduct after getting the horse, coupled with his knowledge of the ownership, is evidence of an intention to steal from the beginning.

We think such a case, and one like the present, may stand upon the same principle. Deception and treachery may be practised in each. In one there is a severance from the realty,. which is the taking that must be felonious, if any is, and in the other the taking of a horse,—both, by the authority and with the consent of the owner. Now, if in the former case.

[Lyon v. The State.]

the accused himself or by others, contrived to get himself hired to pick cotton with the felonious intent of gathering it and taking it away for his own use, and collected it from the bolls in which it grew, with that intent, and appropriated it to his own benefit or that of another, and thus deprived the owner of it, he would, in our opinion, be guilty of the crime charged in this indictment, just as the hirer of the horse who obtained him by pretending to want him for only a short ride, and then sold him, would be guilty of larceny.

It is obvious, however, that the testimony should clearly tend, in such a case as the present, to show that there was a felonious design existing when defendant engaged himself to pick the cotton, which was afterwards carried into effect, of gathering it and against the will of the owner appropriating it to his own or some other person's use. For the law presumes that one who has been not only authorized, but employed to gather the cotton of another, and promised a reward for doing so, is honestly performing his engagements. And something more than the single fact, that in the course of the day, he afterwards took away and secreted, if he did do so, cotton which he had been gathering and which had thereby become personalty, is necessary to show that he picked it from the bolls with that intent. Such evidence might tend to prove larceny of the cotton after it was gathered; but that is not the offense here charged. And of this offense, the jury should not find defendant guilty, unless by fair inference from testimony tending to show it,—they are convinced beyond a reasonable doubt that he engaged himself to pick the cotton and picked it with the intent then actuating him, of stealing it. If he was guilty only of the larceny of the article taken, as a personal chattel, after its severance from the bolls, the prosecution should be for that offense, and not for the felonious taking and carrying away of a part of an outstanding crop.—See *State v. Chambers*, 6 Ala. p. 856.

There is another feature of this case which was the subject of comment. Defendant was entitled to keep the cotton he picked until the close of the day, and then it was to be weighed. And this led to a discussion of the law of bailment, and embezzlement in connection with this case. But these relate to personal chattels. If appellant was guilty at law under this indictment, he was so in respect of what was done before the cotton was severed from the realty, so as to become personalty that could be carried from the field. And if the contract with Rush was entered into on the part of defendant, merely as a means to enable him to gather the cotton and

[Cahall and Pond v. Citizens Mutual Building Association.]

feloniously carry it off, it does not matter what terms or conditions were added concerning things that were to be afterwards done. This right to the possession until the close of the day, was a very proper topic of argument before the jury, in explaining away what might appear to be criminal in the act of carrying the cotton out of the field, when that was relied on as evidence of an intent to steal in the first instance—but does not require consideration from us.

We have already mentioned that the felonious intent must have accompanied the act of gathering the cotton, in order to justify a conviction of defendant on this indictment. This proposition was embodied in the seventh of the charges asked by defendant and refused by the court. In this refusal the circuit judge erred. The other charges requested, or most of them, needed some qualification, of a kind indicated in this opinion, to prevent the jury from being mislead by them, and were therefore properly refused.

Let the judgment of the Circuit Court be reversed and the cause remanded.