# Jones *v.* The State.

## *Murder.*

(Decided February 13, 1913.　Rehearing denied March 17, 1913.
61 South. 434.)

1. *Indictment and Information; Name; Designation of Accused.*— An indictment should set forth the christian name of the defendant and not use initials and when initials only are used the indictment is subject to plea in abatement unless it is further alleged in the indictment that the name of the accused was otherwise unknown to the grand jury than as alleged.

2. *Same; Designation of Persons Slain.*—The use of initials instead of the christian name of the person alleged to have been slain, in an indictment for murder, does not render the indictment subject to demurrer or to plea in abatement, or create such a variance as will authorize the direction of the verdict for defendant.

[Jones v. The State.]

3. *Same; Defects; Waiver; Plea to Merits.*—After a defendant has pleaded to the merits, the indictment is not open to motion to strike, to demurrer, or to plea in abatement.

4. *Jury; Competency; Fixed Opinion.*—After a proper explanation of what constitutes a fixed opinion as to the guilt or innocence of a defendant, a juror who answered that he could not say that he had a fixed opinion, that he might not be able to do justice, that he had an opinion, but did not know whether it could be called a fixed opinion, and that he believed he could try the case fairly and impartially on the evidence and render an honest and fair verdict, was competent; so also was one who answered that he had a fixed opinion, but would be governed by the evidence in the case, and the evidence alone, and the law of the case as given him by the court.

5. *Evidence; Diagram.*—The purported diagram of the interior of the car in which a homicide was committed, as corrected by the testimony of the conductor, was admissible in evidence.

6. *Same.*—Where witnesses testified as to the diagram of the interior of the car in which the homicide was committed, but were not positive as to its correctness, and referred to it for the purposes of demonstration, but such diagram was not offered in evidence until verified and corrected by the testimony of the conductor, it was admissible, and it was for the jury to say whether it was correct, whether the correction of it was properly made, whether the testimony relative thereto was accurate and the extent to which they would be aided thereby.

7. *Same; Communications Signed by Deceased.*—The admission of a communication to a newspaper signed by deceased and others as to certain publications in the paper, without showing who wrote the communication, was not erroneous; it having been offered by defendant without objection on the part of the state, and was signed by deceased, together with others.

8. *Same; Opinion; Cross-Examination.*—Where defendant's mother as a witness for him had testified as to his mental condition, stating that he was crazy, it was competent to permit the state to prove by her that she had never made any attempt to have him adjudged insane or placed in an asylum, as much latitude is permitted on cross-examination for the purpose of ascertaining the credibility of the witness's testimony.

9. *Same; Expert; Sanity; Qualification.*—In order for a non-expert to be competent to express an opinion that a person is insane he must be shown to have had a continuous acquaintance with him of such intimacy as to enable him to form an accurate and trustworthy opinion as to his mental status.

10. *Same.*—Whether a non-expert is shown to have the qualifications sufficient to authorize him to give an opinion whether another person is insane, is a question addressed to the court in the exercise of a sound ·discretion, and not reviewable on appeal, except for palpable abuse.

11. *Same.*—Where the non-expert said that he had known defendant as a speaking acquaintance for about a year, and had known him intimately for about a month, but did not state the extent of their association except as to what happened during the three dif-

[Jones v. The State.]

ferent days of that time. the court properly ruled that such a witness did not have the proper qualifications to give an opinion as to the insanity of the defendant.

12. *Trial; Remarks of Court.*—Where a defendant offered a communication to a newspaper purporting to have been signed by the deceased, without showing by whom it was written, and the state interposed no objection to its admission, the remarks of the trial court that the state had consented for it to go in without objection as having been signed by this young man, that the court did not think the court would have permitted it to go in if there had been objection, but that it was in, and any further question as to deceased's connection with it was immaterial at that time, did not have the effect to so weaken or destroy the force of the evidence offered as to be reversible error.

13. *Witnesses; Corroboration; Previous Declarations.*—Where the mother of defendant had testified to the insanity of defendant, her declarations as to his insanity made to the father of defendant, were not admissible.

14. *Same; Examination and Cross.*—Where a witness for defendant had been examined at length by defendant, and then cross-examined by the State, whether or not the defendant will be permitted a re-direct examination as to matters provable on the direct examination is addressed to the discretion of the trial court, and will not be reviewed unless abused.

15. *Same; Scope.*—The number of persons who had told defendant about the reports claimed to have been circulated by deceased should have been brought out on the direct examination of defendant as a witness. the charge being murder and the defense insanity. and the court will not be put in error for declining to permit such testimony on the re-direct examination of defendant; especially where it appeared that it would have been a mere repetition of facts already stated.

16. *Appeal and Error; Harmless Error; Evidence.*—The exclusion of questions seeking a mere repetition of facts already stated by the witness is neither erroneous nor prejudicial.

17. *Constitutional Law; Right to Be Heard.*—Section 6 of the Bill of Rights is intended to guarantee to a defendant the right to have his case argued and properly presented to the court and jury by himself and by counsel, and does not authorize him to make a statement of facts outside the evidence. The right thus guaranteed must be exercised at the proper time and in the proper manner; hence, where a defendant had testified as a witness, he had no right to make statements not amounting to legal evidence until after the evidence was closed, and then if he wished to be heard he should claim that right during the time allotted to him, usually between the opening and closing arguments for the State.

18. *Homicide; Evidence; Declarations of Accused; Insanity.*—Where the prosecution was for murder, and the plea of insanity was offered. the defendant had the right to prove by his mother his acts and declarations tending to show his insanity. but that was a matter for direct examination.

3—181

[Jones v. The State.]

19. *Same.*—Wh're the defendant's theory was that remarks and reports about -'s wife had come to him so thick and fast shortly before the killing, that they affected his mental condition, and where he had testified as to things he had heard about her, the state, on its inquiry as to his mental responsibility, had the right to go into the facts, and the acts or conduct of defendant tending to refute his claim of insanity, and contradictory of facts claimed to be the cause of his insanity ; hence, there was no error in permitting the state to ask him what he had said to third persons as to the hold he had on a certain man with whom his wife's name had been connected, or in permitting evidence of third persons as to previous conversations with defendant as to the rumors about his wife, and her relationship with another man.

20. *Same; Threats by Deceased.*—Where the prosecution was for murder defended on the theory of insanity induced by certain reports, and defendant had proved threats by deceased against him, it is competent for the state to introduce evidence of statements made by defendant indicating that he was on friendly terms with deceased, as tending·to show either that he had not heard, or did not believe, that the reports had emanated from deceased.

21. *Same; Relevant Facts.*—In a trial for murder, it was not incompetent to permit a witness to state who composed a certain canning company with which defendant and several of the witnesses seem to have been connected.

22. *Same; Acts and Declarations of Accused.*—The acts, declarations and demeanor of accused, before or after the offense, are admissible against him, whether part of the res gestæ or not, but are not admissible for him unless part of the res gestæ.

23. *Same; Threats by Deceased.*—Until there was evidence tending to show that defendant acted in self-defense in committing the homicide, evidence of threats made by deceased against defendant was not·admissible.

24. *Same; Insanity; Burden of Proof.*—Where defendant interposed the statutory plea of not guilty by reason of insanity as a defense to a charge of murder he has the burden of establishing the plea to the reasonable satisfaction of the jury, and a reasonable doubt is not sufficient.

25. *Same; Instructions; Character; Misleading.*—Charges asserting that testimony as to defendant's bad character was relevant only as affecting his credibility as a witness, and not as bearing on his guilt, and that evidence of his bad character could not be considered for the purpose of determining his guilt or innocence, were calculated to mislead the jury to the belief that, although they may not have believed the defendant's evidence, that fact should not influence them in passing on his guilt or innocence, and hence, were properly refused.

26. *Same; Province of Jury.*—A charge asserting that if defendant heard defamatory remarks by deceased against defendant's wife which destroyed defendant's free agency at the time of the offense, he was not guilty by reason of insanity, although he knew it was wrong at the time, and that it was not important whether deceased actually uttered such remarks or not, was properly refused in that

it instructs without hypothesis that the effect of hearing such remark was to destroy defendant's free agency.

27. *Same.*—Where the charge was murder defended on the ground of insanity, a charge asserting that if one of defendant's progenitors was afflicted with insanity, by reason of which defendant inherited a diseased mind, and if defendant believed that deceased had made defamatory remarks about defendant's wife, and such belief, combined with any other cause, had entirely deprived him of will power at the time of the offense, defendant was not guilty, although he then knew that the act was wrong, was objectionable as singling out certain parts of the evidence, and was otherwise fully covered by given instructions.

28. *Same; Self-Defense; Peril.*—A charge that if there was reasonable doubt whether the circumstances were such as to impress the mind of a reasonable man that he was in danger of great bodily harm at the time of the killing, the jury must give him the benefit of the doubt, and acquit the defendant, pretermitted an honest or bona fide belief of the defendant, that he was in peril, and was properly refused.

29. *Same; Insanity.*—A charge asserting that insanity was not a stronger term than unsound mind, and did not import a greater degree of mental infirmity, but which did not define unsoundness of mind, or insanity such as would render a person irresponsible, was calculated to mislead the jury into believing that any unsoundness of mind amounted to insanity.

30. *Same.*—Where it appeared that defendant had ample time for cooling after hearing the reports about his wife, a charge asserting that if at the time of the killing he was affected by an illusion that deceased was responsible for the reports prejudicial to the character of his wife, that fact was to be considered in mitigation of the offense charged, pretermitted in hypothesis the fact that such illusion must have so affected him as to render him irresponsible. and was properly refused.

31. *Same.*—A charge asserting that if defendant at the time the homicide was committed was insane on the subject of defamatory remarks by deceased with regard to defendant's wife, and on the subject of a conspiracy by deceased with others to convict defendant of arson, he should be acquitted, provided such insanity overpowered his will. and his power to comprehend the consequences of his act, gave undue prominence to certain parts of the evidence, and was consequently objectionable.

32. *Same.*—Where the offense charged was murder, and the defense insanity, and there was no evidence that deceased had conspired with others to convict defendant of arson, a charge asserting that if defendant was insane on the subject of such conspiracy, he should be acquitted, was abstract.

33. *Same; Burden of Proof.*—A reasonable doubt as to whether defendant was sane or insane at the time of the killing does not require an acquittal, as the burden was on defendant to reasonably satisfy the jury of his insanity under his plea.

34. *Same; Degree.*—In a trial for murder defended on the plea of insanity induced by defamatory reports concerning defendant's

wife, where ample cooling time had elapsed between the last report and the killing, a charge that if defendant was informed of the opprobrious language relating to his wife, spoken by deceased on the day of the killing, and he immediately and on the first opportunity shot deceased as the result of heated passion, cooling time had not elapsed, and he was only guilty of murder in the second degree, was properly refused.

35. *Same.*—The refusal of instructions that before the jury could convict, they must weigh the evidence, and that if they believed the defendant insane, their verdict must be guilty by reason of insanity, was not prejudicial to defendant.

36. *Charge of Court; Covered by Instructions Given.*—It is not error to refuse requested instructions covered by written instructions given.

37. *Same; Sufficiency of Evidence.*—A charge that before the jury could convict they must be satisfied to a moral certainty, not only that the proof was consistent with defendant's guilt, but that it was wholly inconsistent with every other rational conclusion, and that unless the jury were so convinced by the evidence of his guilt that they would venture to act upon that conviction, etc., was properly refused as argumentative.

APPEAL from Montgomery City Court.

Heard before Hon. ARMSTEAD BROWN.

Walter Jones was convicted of murder in the first degree, and he appeals. Affirmed.

The indictment charges the killing of S. Rowan, in the usual form, for murder in the first degree. The demurrers raise the questions that Rowan's true name is "Sloan Rowan," and is not set out. The application for change of venue was based upon the state of public mind, the action taken by the authorities and certain publications in the local papers, together with affidavits pro and con as to whether or not defendant could get a fair trial. When Bishop was being qualified as a juror, he answered: "I really cannot say that I have a fixed opinion. I might not be able to do justice. I have my opinion, but I don't know whether you call it a fixed opinion. I believe I could try the case fairly and impartially on the evidence, and render an honest and fair verdict." Roemer answered that he had a fixed

opinion, but that he would be governed by the evidence in the case, and the evidence alone and the law given by the court.

The killing occurred on a car attached to the Western Railway train just before it left for Selma, and the diagram referred to in the opinion was a diagram of the car in which the killing occurred. When J. W. Brown was a witness, he was asked if he signed his name with reference to an article in the Advertiser as to the arson business in Lowndes county, and replied in the affirmative, whereupon the article referred to was shown him and introduced in evidence by the defendant. The article referred to deprecated the excitement and notoriety concerning certain burnings and their publication in the columns of the papers, and asserted that there was no excitement or unrest among the people of Benton. It was signed by S. Rowan and others, and it was shown that Rowan, not only signed it, but wrote it. The court remarked while the attorneys were objecting to the fact that Rowan signed it: "The state consented for it to go in without objection as having been signed by this young man. I don't think I would have admitted it, if put up to me on objection. It is in, that is all there is to it; but any further question as to Mr. Rowan's connection with it is immaterial at this time."

The following is the oral charge of the court excepted to: "In the trial of a homicide case, where the plea of not guilty and the statutory plea, plea of not guilty by reason of insanity, are both interposed, the burden of proof as to the first plea is upon the state to satisfy the jury beyond a reasonable doubt of the guilt of defendant; but, as to the second plea, the burden of proof is upon defendant to establish the plea of not guilty by reason of insanity to the reasonable satisfaction of the

jury by a preponderance of the evidence, and a reasonable doubt is not sufficient to acquit the defendant under this plea. Hence it will be seen that, under these two pleas and issues, the burden of proof in the one case is upon the state and in the other upon the defendant. The weight and sufficiency of the evidence as to the one plea is that the state must satisfy the jury beyond a reasonable doubt; whereas, as to the other plea, the defendant must reasonably satisfy the jury by a preponderance of the evidence."

The following charges were refused to the defendant:

(3) "Testimony of defendant's character in this case is relevant only as affecting the credibility of the defendant as a witness, and not as having any bearing on defendant's guilt."

(4) "The evidence of the bad character of defendant cannot be considered by you in this case for the purpose of determining the guilt or innocence of defendant."

(24) "I charge you, gentlemen, that if you believe from all the evidence that the defendant heard from any source defamatory remarks of the deceased against his wife, that the effect of hearing such remarks was to destroy the free agency of the defendant at the time of the offense charged, then you must find defendant not guilty by reason of insanity, although defendant knew it was wrong at the time of the killing, and it is unimportant whether such remarks of the deceased were actually uttered or not."

(29) "Although you may believe from the evidence that defendant is a man of bad character, you cannot convict him because of these facts, but, before you can convict him, you must believe beyond a reasonable doubt from the evidence that defendant shot and killed Rowan under circumstances constituting murder or manslaughter."

(30) "I charge you, gentlemen, that if you believe from the evidence in this case that one of defendant's progenitors was afflicted with insanity, that by reason of such insanity the defendant inherited a diseased mind, and that defendant believed that deceased had uttered the defamatory language against defendant's wife, and such belief, combined with any other cause, so disturbed defendant's mind as to suspend his will power entirely at the time of the offense charged, then you must find defendant not guilty by reason of insanity, and this is true, although defendant at the time of the killing knew the act was wrong."

(40) "If the jury have a reasonable doubt whether the circumstances were such as to impress a reasonable man's mind that he was in great danger of great bodily harm at the time of the killing, then they must give the prisoner the benefit of the doubt, and acquit him."

(55) "Before the jury can convict the defendant, they must be satisfied to a moral certainty, not only that the proof is consistent with defendant's guilt, but that it is wholly inconsistent with every other rational conclusion, and, unless the jury are so convinced by the evidence of defendant's guilt that they would each venture to act upon that decision in matters of highest concern and importance to his own interest, then you must find defendant not guilty."

(23) "The court charges the jury that insanity is not a stronger term than of unsound mind, and does not imply a greater degree of mental infirmity."

(18) "If the defendant was informed of the opprobrious language regarding his wife as uttered by the deceased upon the day of the killing of the deceased, and that the defendant immediately, and upon the first opportunity, shot and killed the deceased, the killing

having been the result of heated passion, cooling time had not elapsed, and you cannot find the defendant guilty of an offense greater than murder in the second degree."

(35) "If the jury believe from the evidence that at the time of the killing of the deceased by the defendant the defendant was so affected by the illusion that Rowan was responsible for the dissemination of a report highly detrimental to his wife and her character, then they should consider that fact in regard to a mitigation of the offense charged in the indictment."

(36) "If the jury believe from the evidence that at the time of the consummation of the alleged homicide the defendant was laboring under a diseased condition of mind, that he was insane on the subject of the defamatory remarks made by deceased in regard to the wife of defendant, and on the subject of deceased and others having conspired to convict him of arson, and run him and his employees from his place of business in the town of Benton, then the jury should acquit the defendant, provided the jury believe from the evidence that such diseased condition of defendant's mind destroyed the power of defendant to comprehend rationally the nature and consequences of his act, and overpowered his will."

(50) "The court charges the jury that if you have a reasonable doubt in your mind arising out of the evidence as to whether defendant was sane or insane at the time of the killing, then it is your duty to acquit."

(E) "I charge you, gentlemen, that, before you can convict the defendant, you must weigh all the evidence in this case, and if, after considering all the evidence, you believe defendant is insane, your verdict must be guilty by reason of insanity."

[Jones v. The State.]

GEORGE E. GORDON, FRANK S. STONE, W. P. MC-
GAUGH, and LETCHER, McCORD & HAROLD, for appellant.
The jurors Roemer and Bishop should have been ex-
cused for cause.—6 Mayf. 514. The court should have
sustained the demurrer to the indictment, and have
granted the motion in arrest of judgment because of
errors therein.—*Benjamin v. State,* 25 South. 917;
*Francois v. State,* 20 Ala. 83. The indictment was de-
fective for not alleging the christian name of deceased.
—*Morningstar v. State,* 52 Ala. 406; 1 Chity's Crim.
Law 216; *Thompson v. State,* 48 Ala. 165; *Gerrish v.
State,* 53 Ala. 476. The court erred in admitting the
diagram of the car.—*Burton v. State,* 107 Ala. 108;
*Wilkinson v. State,* 106 Ala. 23. The court erred in
admitting the article in the newspaper alleged to have
been signed by Rowan and others, and afterwards quali-
fying it as he did.—*Griffin v. State,* 90 Ala. 600; *Green
v. State,* 96 Ala. 32; *Moon v. Crowder,* 72 Ala. 79; *Tolli-
ver v. State,* 94 Ala. 112. The court erred in admitting
evidence as to the acts and declarations of defendant
after the shooting.—*Fonville v. State,* 91 Ala. 39; *Moore
v. N. C. & St. L.,* 34 South. 619. It was not permissible
for the state to go into the merits of the arson cases in
Lowndes county.—*Carden v. State,* 84 Ala. 417. The
court erred in not permitting the evidence of Wingfield
as to the insanity of defendant.—*Parson's case,* 81 Ala.
577; *Boswell's case,* 63 Ala. 308; *Norris v. State,* 16
Ala. 776. The testimony of Pitts was not admissible,
as no proper predicate was laid.—*Ex parte Livingston,*
61 South. 53; 61 South. 885. The defendant was enti-
tled to make the statement offered by him outside the
legal evidence.—Sec. 6, Bill of Rights, and authorities
there cited. On the authority of *Burton's case, supra;
Brown v. State,* 108 Ala. 118; *Beasley v. State,* 50 Ala.
149; 23 Cyc. 1112; 22 Cyc. 1113, and authorities there

cited, it is insisted that the court erred in refusing the charges requested by defendant.

R. C. BRICKELL, Attorney General, W. L. MARTIN, Assistant Attorney General, and HILL, HILL, WHITING & STERN, for the State. There was no merit in the pleas, motions or demurrers addressed to the indictment.— *Thompson v. State,* 48 Ala. 165; *Franklin v. State,* 52 Ala. 414; *Crittenden v. State,* 134 Ala. 145; *Knight v. State,* 152 Ala. 56. If there was any merit in them they came after the plea to the merits had been interposed, and were consequently too late.—*Hubbard v. State,* 72 Ala. 164; *Smith v. State,* 142 Ala. 22. No error was committed in declining to excuse the jurors Roemer and Bishop for cause.—*Carson v. State,* 50 Ala. 134; *Beason v. State,* 72 Ala. 191; *Hamill v. State,* 90 Ala. 577; *Ragsdale v. State,* 134 Ala. 31; *Jarvis v. State,* 138 Ala. 117. The diagram of the car was properly admitted in evidence.—*Shook v. Pate,* 50 Ala. 91; *Burton v. State,* 107 Ala. 121; s. c. 115 Ala. 9. It was competent to show that deceased was a witness against defendant in the arson cases in Lowndes county, which was set for trial the Monday following the killing.—1 Mayf. 329. Counsel discuss the action of the court relative to the remarks made on the introduction of the newspaper article, and insist that they were without error.—*Meineke v. State,* 55 Ala. 47; *Schieffelin v. Schieffelin,* 127 Ala. 33. It is competent to show the acts, demeanor and expression either before, at the time of or after the homicide.—*Maddox v. State,* 159 Ala. 56; *Campbell's case,* 23 Ala. 79. The witness Wingfield was not shown to be qualified to give his non expert opinion as to the insanity of defendant.—*Parrish's Case,* 149 Ala. 42; *Braham v. State,* 143 Ala. 28. A defendant in taking the stand as a witness in his own behalf waives his con-

stitutional protection, and may be required to stand a cross examination.—*Pate v. State,* 150 Ala. 17; Sec. 7894, Code 1907, and authorities there cited. Counsel discuss charges refused, and insist that they were properly refused either as being abstract, argumentative, covered by those given, or as incorrectly stating the law of insanity as a defense to murder.—*Parrish v. State,* 139 Ala. 50; *Parson v. State,* 81 Ala. 577; *Rose v. State,* 144 Ala. 116; *Parker v. State,* 51 South. 261; *Shelton v. State,* 144 Ala. 108.

ANDERSON, J.—An indictment which sets forth the defendant's Christian name by initials only is subject to plea in abatement, unless it is alleged that the Christian name was unknown to the grand jury otherwise than as laid in the indictment.—*Gerrish v. State,* 54 Ala. 476; *O'Brien v. State,* 91 Ala. 27, 8 South. 560; *Jones v. State,* 63 Ala. 28; *Lyon v. State,* 61 Ala. 229; *Wellborn v. State,* 154 Ala. 79, 45 South. 646. It is not so important, however, when individuals are only collaterally concerned in the act for which another is prosecuted—as for instance, those whose persons or property may have been affected thereby—that their names should be so fully and correctly stated, though they also ought to be. In the last class our court has held that it is permissible to charge the initial of the owner of the property affected or the person injured.— *Knight v. State,* 152 Ala. 56, 44 South. 585; *Knight v. State,* 147 Ala. 104, 41 South. 911; *Crittenden v. State,* 134 Ala. 145, 32 South. 273; *Lowe v. State,* 134 Ala. 154, 32 South. 273; *Gerrish v. State, supra;* and *Lyon v. State, supra.*

The designation of the party slain as "S. Rowan," instead of by his Christian name of "Sloan Rowan," did not render the indictment subject to a demurrer or plea

in abatement, or create a variance available under the general charge.—*Franklin v. State,* 52 Ala. 414; *Knight's Case,* 147 Ala. 104, 41 South. 911.

Moreover, the indictment was not open to a motion to strike, a demurrer, or plea in abatement made or interposed after a plea to the merits.—*Hubbard v. State,* 72 Ala. 164; *Smith v. State,* 142 Ala. 22, 39 South. 329. Of course, there was no merit in the motion in arrest of judgment arising out of the point above discussed. It often occurs when answering on their voir dire as to their qualifications as jurors, or whether subject to challenge for cause, that persons do not understand the meaning of the question propounded, and are mistaken in their reply, which is demonstrated by an explanation by the court as to the meaning of the question, and a further answer by the juror, showing that he is competent, and thus qualifying his answers to the unexplained questions propounded to him by the court.—*Jarvis v. State,* 138 Ala. 17, 34 South. 1025; *Ragsdale v. State,* 134 Ala. 31, 32 South. 674; *Carson v. State,* 50 Ala. 134; *Hammil v. State,* 90 Ala. 577, 8 South. 380; *Beason v. State,* 72 Ala. 191.

We are of the opinion that the jurors Bishop and Roemer were not disqualified as disclosed by their final answers to the court after a proper explanation was made to them as to what constituted a fixed opinion as to the guilt or innonence of the accused.

There was no error in permitting the state to introduce in evidence what purported to be a diagram of the interior of the car in which the homicide occurred, as corrected by the testimony of the conductor, or which said correction was brought about by his testimony.

The other witnesses who testified as to said diagram were not absolutely positive as to the correctness of its every detail, and used and referred to it generally as a

memorandum, and for purposes of demonstration, and it was not introduced in evidence until verified and corrected by the evidence of the conductor. The jury had the benefit of same with and without the said correction, and it was for them to say whether it was correct or not, or whether or not the correction was properly made upon same. The correctness of the diagram, as well as the accuracy of the testimony relative thereto, was a question for the jury, as was, also, the extent to which they were aided by said diagram.—*Burton v. State,* 115 Ala. 9, 22 South. 585; *Burton v. State,* 107 Ala. 121, 18 South. 284; *Shook v. Pate,* 50 Ala. 91.

It was competent for the state to show the previous relationship between the defendant and the deceased, and that deceased had been active in prosecuting him in an arson case, and had appeared and testified on the preliminary as a witness against him, as this showed a motive for wanting to get him out of the way, as well as ill will or malice.—*Hudson v. State,* 61 Ala. 333.

The trial court committed no reversible error as to the introduction of the communication signed by Rowan and other citizens of Benton as to certain publications of the Advertiser. It was offered by the defendant, and the state did not object to same, and it was signed by Rowan, together with others, and it mattered not who wrote it.

Nor do we understand that the remarks of the court operated to exclude this evidence in fact or in effect. The court did not, by the remark made, weaken or destroy the force of the evidence so as to bring this question within the influence of the case of *Griffin v. State,* 90 Ala. 596, 8 South. 670. The court merely questioned the admissibility of this evidence when offered by the defense, as there was no evidence, up to that stage of the trial, tending to show self-defense, and, while the

state had the right to show animus on the part of the defendant towards the deceased, the defendant had no right to show animus or ill will on the part of Rowan towards him until there was evidence offered from which the jury could infer that Rowan was the aggressor, and which was not the case when this communication was offered; and the court merely questioned the admissibility of same, but let it in as the state had consented to same. Moreover, the communication in question made no allusion to the defendant; and if the same had been excluded, or its weight weakened by the remark of the court, it could have been of no damage to the defendant.

Nor did the trial court err in excluding any threats made by Rowan against the accused, until there was evidence tending to show that the defendant acted in self-defense.

The acts, declarations, and demeanor of an accused, before or after the offense, whether part of the res gestæ or not, are admissible against him, but unless a part of the res gestæ are not admissible for him.—*Maddox v. State,* 159 Ala. 53, 48 South. 689. The testimony of the witnesses Mullens, Beasley, and Mahaley, as to what defendant did immediately after the shooting, and that he was seen with another after getting off the train and appeared to be talking to him, tended to show, whether slight or strong, that there was a prearrangement of the homicide. The case of *Fonville v. State,* 91 Ala. 39, 8 South. 688, is not at all in point, and has no bearing on the present question. There was an attempt to show an assault by the defendant on another person at an entirely different time, and the court held that it had nothing to do with a prosecution for assaulting another person who was in no way connected with the other assault. The case of *Moore v. N. C. & St. L. R.*

*R. Co.,* 137 Ala. 495, 34 South. 617, was a civil case. Moreover, the acts and declarations there held to have been properly excluded were made by the plaintiff and offered by him. Of course, a party cannot prove his subsequent acts or conduct if not a part of the res gestæ, but this does not prevent the other party from doing so, when said acts or conduct are beneficial to the other party.

Much latitude is given upon cross-examination, and there was no error in permitting the state to prove by Mrs. Jones that she never made any attempt to have the defendant adjudged a lunatic, or placed in an asylum. She had previously testified as to his mental condition, and that he was crazy, and, being his mother, the fact that she had never made any effort or attempt to have him placed in an asylum was a fact to go to the jury, as affecting the credibility of her evidence as to the defendant's insanity.

Nor could the witness fortify her testimony by showing declarations that she made to her husband.

Upon the plea of insanity, the defendant had the right to prove by Mrs. Jones the acts and declarations of himself tending to show insanity, but the trial court will not be put in error for not letting counsel prove a fact on redirect which should have been brought out on the direct examination. Mrs. Jones had been examined at length by the defendant, and then cross-examined by the state, and the trial court did not err in refusing to allow her to be asked, by the defendant on redirect examination, "if she had heard Walter Jones say he was going wild."

While a nonexpert witness can give an opinion as to the sanity or insanity of a person, yet, in order for him to give his opinion that a person is insane, he must show an acquaintance with him of continuous intimacy, such

as will enable him to form an accurate and trustworthy opinion as to the mental condition of the subject of inquiry.

Whether the qualification of the witness is sufficient is a question to be determined by the trial court, and the very nature of the test requires that its determination in particular cases be left to the sound discretion of the trial court, and which will not be revised on appeal, except for palpable abuse.—*Odom v. State,* 174 Ala. 4, 56 South. 914; *Braham v. State,* 143 Ala. 28, 38 South. 919; *Parrish v. State,* 139 Ala. 16, 36 South. 1012; *Ford v. State,* 71 Ala. 385. The witness Winfield said he had known the defendant to speak to him for about a year, and that he had known him intimately only for about a month, but he made no statement showing the extent of their association or contact with each other, except as to what happened during three different nights, and we are not prepared to say that the trial court erred in holding that this witness could not give an opinion that the accused was insane.

The last question to the defendant as to the number of persons who had told him about the reports sought, in substance, a mere repetition of facts already stated by the defendant.    Moreover, it should have been brought out on direct, instead of the redirect, examina-tion of the defendant as a witness.

There was no reversible error in permitting the witness to state who composed the Vandiver Canning Company, as the defendant and several of the witnesses seemed .to have been connected with it.

The question to the defendant as to what he said to Pitts and Spivey as to the hold he had on Vandiver sought proper evidence, and was admissible without a predicate.—*Ex parte State, infra,* 61 South. 54.    The defendant had testified as to things he had heard about

his wife, and his theory was that these remarks and reports had come so thick and fast shortly before the killing that they affected his mental condition, and this inquiry of mental responsibility was far reaching, and the state had the right to go into any facts, acts, or conduct on the part of the defendant which tended to refute the claim of insanity, or which was contradictory of facts claimed to be the cause of said insanity in whole or in part. There was no error in permitting the evidence of Hood, Pitts, Spivey et al. as to previous conversations with the defendant as to the rumors about his wife, and her relationship with Vandiver.

It was also proper for the state to show statements by the defendant indicating that he was not on unfriendly terms with Rowan, as that had a tendency to show that he had not heard, or did not believe, that certain reports had emanated from Rowan. The defendant also proved threats made by Rowan against him, and these expressions of friendship towards Rowan tended to show that he had not heard of the threats claimed to have been made by Rowan, or did not believe them.

For a long time in this state an accused could not testify or make a statement of the facts, but the rule was relaxed some years ago so as to permit him to make a statement of the facts, but not under oath, and this statute was subsequently enlarged so as to permit him to testify under oath, upon his trial, like any other witness. Section 6 of the Bill of Rights, which provides that "in all criminal prosecutions, the accused has a right to be heard by himself and counsel, or either," does not relate to rules of evidence or authorize the accused to make a statement of facts outside of the evidence. We think that the real purpose of this provision of the Constitution is to guarantee to the defend-

ant the right to have his case argued and properly pre- sented to the court and jury by himself and counsel, one or both, but this right must be under the control of the rules of practice, and must be exercised at the proper time. In other words, under our rules and system, the argument of a case is made after the evidence is closed, and the trial court will certainly not be put in error for not permitting a defendant or his counsel to address the jury before the evidence is all in, or for not letting the defendant make a statement to the jury after the arguments on both sides are concluded.—*State v. McCall,* 4 Ala. 643, 39 Am. Dec. 314; *Blackburn v. State,* 71 Ala. 320, 46 Am. Rep. 323; *Beasley v. State,* 71 Ala. 329. The defendant had already availed himsedf of his right, under the existing law, to testify as a witness, and had no right to address the jury or make statements not amounting to legal evidence until after the evidence was closed. If he then wished to be heard by himself, as well as by his counsel, he should claim the right during the time allotted to him; that is, between the opening and closing arguments of counsel for the state.

The exception to the oral charge is without merit, as it was read from the case of *Parrish v. State,* 139 Ala. 50, 36 South. 1012, and was a correct statement of the law as to the burden of proof upon the plea of insanity.

Defendant's refused charges 3 and 4 were properly refused. If not otherwise bad, they were calculated to mislead the jury to the belief that, although they may not have believed the evidence of the defendant, this fact should not have influenced them in passing upon his guilt or innocence.

Charge 24, if not otherwise faulty, invaded the province of the jury, as it instructs, without hypothesis that

the effect of hearing defamatory remarks about his wife was to destroy the defendant's free agency.

Charge 29, whether good or bad, was covered by given charge 1.

Charge 30 singles out and gives undue prominence to certain parts of the evidence. Moreover, the legal proposition attempted to be asserted is fully covered by given charges 17, 21, 32, and 33.

Charge 40, if not otherwise bad, pretermits an honest or bona fide belief on the part of the defendant that he was in peril.

Charge 55 was properly refused.—*Shelton v. State,* 144 Ala. 106, 42 South. 30, and cases there cited, and which overruled the case of *Brown v. State,* 118 Ala. 111, 23 South. 81, and also notes the overruling of *Burton v. State,* 107 Ala. 108, 18 South. 284, and *Brown v. State,* 108 Ala. 18, 18 South. 811. See, also, *Amos v. State,* 123 Ala. 50, 26 South. 524.

Charge 23 is bad, as the jury could have been misled into the belief that any unsoundness of mind amounted to insanity, and it neither defines such unsoundness of mind or insanity as will make a person irresponsible, and was calculated to confuse the jury.

Charge 18 was abstract, if not otherwise faulty, as cooling time had elapsed between the last report heard by the defendant and the homicide.

Charge 35 was bad. As said above, the defendant had ample cooling time after hearing the report, and before acting, and, if he was affected by the illusion that Rowan disseminated the report, it must have affected him so as to impair his reason and mental powers to the extent of rendering him irresponsible, and which said fact is pretermitted.

Charge 36 gives undue prominence to certain parts of the evidence, and it is also abstract, as there was no

evidence that Rowan had conspired with others to convict the defendant of arson. Moreover, the defendant got the full benefit of same in given charges 17, 21, 32, and 33.

Charge 50 misplaced the burden of proof as to the plea of insanity.—*Parrish's Case, supra.*

The defendant was not injured by the refusal of charge "E." Moreover, it instructed an improper form of verdict.

We think that the preponderance of the evidence before the court, when passing upon the motion for a change of venue, showed that the defendant could get a fair and impartial trial. We do not think that the newspaper publications were such as to influence the public mind to such an extent as to prevent the defendant's getting a fair and impartial jury, and a fair and impartial trial.—*Godau v. State* 179 Ala. 27, 60 South. 908. The trial court did not err in refusing the defendant's motion for a change of venue.

While we have not commented upon every charge refused the defendant, it is sufficient to say that they were either faulty, or were covered by the given charges. Indeed, every point presented by the record has been considered, whether discussed in the opinion or not, and, finding no reversible error, the judgment of the city court is affirmed.

Affirmed. All the Justices concur, except Dowdell, C. J., not sitting.