28 So.2d 799

### LINDSEY v. STATE.
### 8 Div. 530.

Court of Appeals of Alabama.
Aug. 1, 1946.

Rehearing Denied Nov. 12, 1946.

J. Foy Guin, of Russellville, for appellant.

Wm. N. McQueen, Atty. Gen., and Frank N. Savage, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

This is the second time this cause has been before this court. The decision reversing the judgment and conviction of this appellant of manslaughter in the first degree may be found in ante, p. 158, 22 So.2d at page 621.

Upon his second trial appellant was found guilty of manslaughter in the second degree and the jury fixed his punishment at hard labor for a term of six months.

The evidence for the State and for the appellant presented in the trial below is in substantial conflict. Any real detailing of this evidence would only be confusing.

The tendency of the evidence for the State was that between 9 and 9:30 p. m. on May 2, 1944, a number of people were in the business section of Red Bay, Alabama, probably to hear election returns, a primary election having been held that day. A car was driven along Main Street at a speed variously estimated by State witnesses at from 45 to 60 miles per hour. At the intersection of Main and Depot Streets this car either struck the deceased, a man 77 years of age, or the deceased walked into the car. Deceased was severely injured by the impact and died the following day.

The car which struck deceased was owned by John Hammock. It had that day been loaned by John Hammock to his son Golden Hammock, who in turn had loaned it to appellant late in that afternoon. When appellant returned the car late that night it was found to have a tear about six inches long in the rear portion of the left front fender, and two small dents in the front portion. These defects had not been in the fender when Mr. Hammock let his son have the car that morning.

When appellant returned the car to Mr. Hammock there were several persons present, including his son Golden Hammock. They had learned by this time of the injury to deceased by an automobile in Red Bay. Golden Hammock told appellant immediately on his arrival: "Glen, you're into it," to which appellant replied: "You go back into the house and get a good night's sleep, I'm the man that's into it and I will take the blame." The above conversation between appellant and Golden Hammock was shown through the testimony of John Hammock, a witness for the State, over the strenuous objections of appellant. The voluntary character of the statements had however been clearly established before their admission.

The general rule that inculpatory statements not amounting · to a specific confession require no proof of their voluntary character before being admissible in evidence does not prevail in this State. Under our rule, the predicate of voluntariness must be established before such statements can properly be received. If the admissions or statements concern collateral matters, and are in no sense con-

fessory of guilt, then the stringency of our rule is abated and statements of this nature by an accused may be received without proof of their voluntary character. McGehee v. State, 171 Ala. 19, 55 So. 159 and cases therein cited; Jordan v. State, 26 Ala.App. 122, 156 So. 642, certiorari denied 229 Ala. 297, 156 So. 644. Evidence of the commission of a criminal offense by some criminal agency, not necessarily the defendant, is a sufficient predicate for the admission of inculpatory statements made by a defendant, their voluntary character having been established if such statements are in the nature of a specific confession. Simmons v. State, 16 Ala.App. 645, 81 So. 137.

In the instant case it is clear that there was proof of the voluntary character of the statements made by the accused. They were therefore admissible, although not amounting to a direct confession, if in connection with other evidence of surrounding circumstances, inference of the guilt of the accused might be reasonably drawn therefrom. Robertson v. State, 23 Ala.App. 267, 125 So. 60, certiorari denied 220 Ala. 328, 125 So. 61. It is our opinion that the statements attributed to the appellant met the above test and were properly received in evidence.

The State also submitted evidence from which the jury might have reasonably inferred flight on the part of appellant for sometime after the collision of the car with the deceased. Mr. Jackson, Chief of Police for Red Bay, testified that after learning the identity of the car involved in the collision with the deceased he "spotted" the car as it was later being driven in or near Red Bay. He attempted to overtake this car but was outdistanced although the car in which Jackson was making the pursuit at times reached a speed of 60 miles per hour.

Appellant in the trial below testified he had borrowed the Hammock car late in the afternoon of May 2, 1944. After driving home for supper he was returning to Red Bay. On his way he picked up Medford Scott and Bill Cooper, both of whom sat on the front seat with appellant. They drove on into the business section of Red Bay at a speed estimated by these three variously

to be between 20 and 30 miles per hour. At the intersection of Main and Depot Streets the car bumped or jolted and each of the three testified he had been of the opinion that this jolt resulted from the car being driven over an intersection marker, or silent policeman in the center of the intersection of these two streets. This marker was circular and rose in a dome shape to a height of about six inches. It was not unusual for vehicles to strike this marker, and some noise was made when it was so hit.

Thereafter this trio drove about considerably and at random. Sometime after they thought they had hit the marker appellant stopped the car and examined it to see if any injury had been caused to the tires by the blow. The tear in the fender was discovered and it was concluded that the car had hit something other than the marker at the time it had jolted.

Thereafter they drove back into Red Bay and parked near a drug store so that Cooper could get a drink of water. On his trip into the drug store Cooper learned that deceased had been injured by a car. He reported this information when he returned to the car. They then drove back through town, which is apparently the time the car was spotted by Jackson. They drove about considerably before returning the car to Hammock, where Cooper and Scott separated from appellant. All three testified that at no time were they aware of any pursuing car, or that they drove more than 40 or 45 miles per hour on their drives. Likewise all three denied that they had seen the deceased in the street at the time the car jolted from what they thought was driving over the intersection marker.

During his examination the appellant stated he had had one drink of whiskey during the early part of the afternoon. Cooper and Scott, who had been together at supper said they had consumed about a fourth of a pint between them prior to eating supper.

Oscar Underwood appeared as a witness for the defense. On cross examination he was examined as follows, and we now copy from the record:

"Q. I will ask you if you didn't tell Mr. L. A. Jackson about two weeks or ten days ago on the streets of Red Bay that Glen

Lindsey told you that when he hit the man on the street in Red Bay he thought it was Policeman Jackson. Did you tell Mr. Jackson that or did you not?

"The defendant objects on the ground it is illegal, irrelevant and immaterial and because it is purely hearsay.

"By the Court: You can ask him whether the defendant told him that and then if he denies it, you can ask him if he didn't tell Mr. Jackson that.

"Q. I will ask you if Glen Lindsey told you after the accident that when he ran over the man there in Red Bay he thought it was Policeman Jackson. A. I heard a fellow—Glen didn't tell me.

"Q. Glen didn't tell you? A. No sir.

"Q. I will ask you if you didn't tell Mr. L. A. Jackson about two weeks or ten days ago, that Glen Lindsey told you when he ran over the man he thought it was Policeman Jackson? A. I don't recollect if I did.

"Q. Did you or didn't you? A. I don't recall. I know me and Mr. Jackson was talking about it.

"Q. Do you say yes or no? A. I say no.

"Q. You say no? A. That's right."

It is noted that if the objection to the first question be treated as overruled by the statement made by the court no exception was reserved to the court's action. No objections were interposed to the remaining questions.

In rebuttal to Underwood's denial of his alleged conversation with Jackson the State presented Jackson as a witness. After predicating the alleged conversation as to time and place etc. the solicitor asked Jackson:

"In that conversation did he make a statement to you in substance that Glen Lindsey told him that when he ran over Mr. Strickland down there he thought he was running over you?"

Appellant objected to this question on the grounds that it called for hearsay testimony, that it was not admissible by way of impeachment, and because it did not show guilt or consciousness of guilt. The court overruled the objection and appellant duly reserved an exception. Jackson then answered that Underwood had so told him.

■ The fact as to whether appellant had told Underwood that he thought it was Jackson instead of deceased that he ran over was material and relevant to this case. Underwood having denied that appellant had told him this it was competent for the State to inquire if he had not told Jackson that appellant had made the statement to him, and to rebut his denial with Jackson's testimony. Carter v. State, 133 Ala. 160, 32 So. 231; Wigmore on Ev., Vol. III, § 1038.

■ The lower court did not err in overruling appellant's objection to the statement of the solicitor in his argument to the jury: "Why would he do that if he was sober?" and "The defendant's actions there don't indicate to me that he was sober." The appellant himself admitted he had taken a drink early in the afternoon before the collision that night, and his two companions admitted they had taken a drink before supper, but before they joined appellant. In view of this, and the unexplainable conduct of appellant on the night in question as shown by the State's witnesses, the inferences drawn by the solicitor from the evidence were not unreasonable.

■ The court correctly refused appellant's written requested charge No. 16. The argumentative character of this charge is not eliminated because it copied verbatim a statement in a judicial opinion appropriately there used. Fleetwood v. Pacific Mutual Life Ins. Co., 246 Ala. 571, 21 So.2d 696, 159 A.L.R. 171. Maxwell v. State, ante, p. 487, 27 So.2d 804.

The record being free from error substantially affecting the rights of appellant this cause is affirmed.

Affirmed.

## On Rehearing.

In his brief filed in support of appellant's application for a rehearing counsel for appellant argues strenuously that we erred in holding that the trial court was not in error in permitting testimony timely objected to that appellant, when he returned the car and was told by Golden Hammock, in the presence of several other persons "Glen, you're into it," replied "You go back into the house and get a good night's sleep, I'm the man

that's into it and I will take the blame." The grounds of objection to above was that it did not tend to show guilt or a consciousness of guilt, and because not a confession. The appellant's counsel argues that if we adhere to our former opinion we are by indirection overruling prior opinions, which cannot be distinguished from the present case, particularly, Wallace v. State, 25 Ala.App. 334, 145 So. 583; Gilbert v. State, 25 Ala.App. 169, 142 So. 682; Johnson v. State, 24 Ala. App. 316, 134 So. 821, and Mathews v. State, 21 Ala.App. 173, 106 So. 206. We do not agree with counsel's contention.

In the Wallace case, supra, the appellant and a young boy were captured when a group were "flushed" at a still. When apprehended appellant told the young boy, who had begun to cry, "Hush crying there is no use crying, they have caught us and there is no use to cry, just a year and a day." No witness claimed to have seen either Wallace or the boy doing anything in connection with the still. The court pointed out that other than the above facts there was nothing upon which to rest a verdict of guilty, and that it was axiomatic that mere presence at a still was no crime. The record in the present case is replete with evidence tending to establish appellant's guilt. We do not therefore consider the Wallace case decisive of the present case, nor overruled by it, because of the difference in facts.

In the Gilbert case, supra, the appellant had been convicted of violating the prohibition law. Whiskey had been found in his dwelling house. The deputy solicitor was permitted to testify over appellant's objection that in a conference appellant had said "They have caught me about this liquor and there is no way I can get out of it." On cross examination the deputy solicitor testified that appellant had talked about settling the case against him the cheapest and easiest way. The court expressly held that whatever statements made by Gilbert in his conversation with the deputy solicitor were clearly an effort to compromise the case and were not admissible. The court further said that Gilbert's statement was not inculpatory nor an admission of guilt. The background of an effort to compromise indicated such interpretation of Gilbert's state-

ment. By no stretch of the imagination could Lindsey's statement be said to be made in an effort to compromise his case.

The statement in the Mathews case held erroneously admitted was to the effect that the appellant in that case had said that, "He would plead guilty if they wouldn't put no sentence on him." The conditional character of the statement negatives its confessory or inculpatory character completely.

In the Johnson case, supra, the appellant while in jail, had allegedly told a State witness he was going to plead guilty. Pointing out that such action could have been prompted by many motives, the court held it was in no way an admission of guilt. The distinction between the Johnson case and the present case is in our opinion obvious.

We think the statement made by appellant Lindsey to Golden Hammock in the present case well within and governed by the general rule that any statement or conduct indicating a consciousness of guilt, where at the time or thereafter a person is charged with crime, is admissible as a circumstance against him on his trial. Holmes v. State, 29 Ala.App. 594, 199 So. 736; Montgomery v. State, 17 Ala.App. 469, 86 So. 132; Jones v. State, 181 Ala. 63, 61 So. 434.

Application overruled.