50 So.2d 797

**GRIFFITH v. STATE.**

**2 Div. 798.**

Court of Appeals of Alabama.

Feb. 20, 1951.

A. A. Carmichael, Atty. Gen., and Robt. Straub, Asst. Atty. Gen., for the State.

Pitts & Pitts, of Selma, and L. Y. Sadler, Jr., of Camden, for appellant.

PRICE, Judge.

Appellant, a white woman, was indicted jointly with Nathan Bell, a Negro man, on a charge of miscegenation. A severance was demanded and granted. The defendant was first put to trial. The trial resulted in the conviction of the defendant and the court sentenced her to imprisonment in the penitentiary for seven years. From the judgment of conviction this appeal was taken.

The State's contention is as follows: Appellant and her husband operated a store in a Negro community. Nathan Bell was seen frequently in and around the store. Appellant and the said Bell were seen riding together many times in appellant's automobile. They would drive away from the store, remain gone for awhile and then return. They were also seen hugging and kissing in the back of the store.

One afternoon appellant found Nathan at the home of Miley Moore, a Negro woman. A short time afterward she returned to Miley's house and told her that she, appellant, had been going with Nathan for four years and if she ever caught Miley and Nathan together she would kill them. She also told another Negro woman she was going to kill Nathan and Miley.

Appellant and Nathan were seen near a creek by Elmo Griffith, a cousin of appellant's husband. They were behind a bank of dirt and Nathan ran away.

On one occasion appellant left a box and sack containing a lunch and whiskey and Coca Cola for Nathan at the home of Willie Mae White, a colored woman. Nathan was working at a nearby sawmill and he came in at noon and ate the food and drank the whiskey.

They were seen together on an abandoned sawmill road. Appellant was sitting in her car with the door open and Nathan was standing by the open door. Appellant told the colored man who saw them not to tell anybody and "not to have anything to do with white folks business." About four weeks later this witness was in appellant's store and she told him again not to tell what he had seen. This witness later saw Nathan go in the back door of appellant's house at night when her husband was away and he watched for more than an hour and Nathan did not reappear.

Another colored man saw Luby Griffith go into the woods on several occasions, followed shortly thereafter by Nathan Bell. Appellant told witness not to tell anybody what he had seen and gave him two shirts.

All of the State's evidence was denied by defendant. She insisted she never had sexual intercourse with Nathan Bell. She stated that she or her husband often drove negro customers home when they had bought groceries too heavy to carry. She testified she had done sewing for colored people and had quarreled with Miley Moore over the price of sewing and whiskey her husband had bought from Miley. She also said there was hard feelings between her husband and Elmo Griffith, a State's witness, over a will matter.

When the State had concluded the introduction of its evidence and rested, defendant's counsel moved to exclude all the testimony offered by the State.

█ With the exception of the racial feature, the constituent elements of the offense of miscegenation are the same as in ordinary cases of adultery. Jones v. State, 156 Ala. 175, 47 So. 100.

█ It has been stated many times that to make out a case of miscegenation or living in adultery, it is not necessary for the State to introduce positive evidence of an act of intercourse. These are offenses which can rarely be directly proved, but must in the great majority of cases be inferred from a chain of circumstances. There was sufficient evidence to justify the court in submitting the case to the jury and there was no error in the action of the court in overruling defendant's motion to exclude the evidence. Lewis v. State, 18 Ala.App. 263, 89 So. 904; Cole v. State, 17 Ala.App. 488, 86 So. 124; Jones v. State, 156 Ala. 175, 47 So. 100.

Appellant was asked on cross-examination about a quarrel with her daughter in which she is alleged to have beaten her daughter with a stick and chased her from home. The State contended the quarrel resulted when the daughter remonstrated with appellant concerning her relationship with Nathan Bell. Appellant admitted the row and that her daughter left home and remained away for some time. She denied the argument had any thing to do with Nathan Bell. She insisted that Paul Griffith and R. B. Williams persuaded her daughter to leave home.

In rebuttal to this phase of the appellant's testimony the State presented Griffith and Williams as witnesses. Counsel for defense objected and moved to exclude Williams' testimony on the ground the State was attempting to impeach appellant on an immaterial matter.

██ The fact as to whether appellant had beaten her daughter and chased her from home as result of an argument concerning Nathan Bell was material and relevant to the case. It was competent for the State to introduce evidence to rebut appellant's denial of such fact. Carter v. State, 133 Ala. 160, 32 So. 231; Lindsey v. State, 32 Ala.App. 545, 28 So.2d 799.

█ In the proceedings in the court below the defendant filed a demurrer to the indictment on the ground that "defendant is indicted by the name of Mrs. Frank Griffith, alias Luby Griffith, and not by her Christian name." The demurrer was overruled by the court and defendant excepted.

"The question as to whether the defendant was correctly named is not present-

ed here, as same cannot be raised by demurrer to the indictment, but must be raised by plea in abatement, stating his true name." Patton v. State, 29 Ala.App. 215, 194 So. 425, 426, 429; Morningstar v. State, 52 Ala. 405.

Appellant's counsel argues at length in his brief that the indictment is fatally defective because it fails to allege the sex of the parties involved.

■ The indictment is in form prescribed by statute and is sufficient to support the judgment of conviction. Wilson v. State, 20 Ala.App. 137, 101 So. 417.

■ Written charges 4 and 5 were properly refused as giving undue emphasis to portions of the evidence. Brand v. State, 13 Ala.App. 390, 69 So. 379; Braseale v. State, 26 Ala.App. 519, 163 So. 15; Maxwell v. State, 32 Ala.App. 487, 27 So.2d 804; Autry v. State, 34 Ala.App. 225, 38 So.2d 348.

The general affirmative charge for appellant constitutes the only other refused instruction. Clearly it was not due to be given. The motion for a new trial was properly refused.

We have examined all of the exceptions reserved during the introduction of testimony and we find no prejudicial error. The judgment is affirmed.

Affirmed.