# Chappell *v.* The State.

*Indictment for Burglary.*

1. *Act allowing defendants in criminal cases to make statements construed.*—By the act of December 2nd, 1882 (Pamph. Acts, 1882–3, p. 4), authorizing defendants in criminal cases to make statements in their own behalf, the legislature did not intend to allow them to become witnesses, or their statements to become evidence.

[Chappell v. The State.]

2. *Same; how statements should be considered by jury.*—The jury can not, however, wantonly and capriciously disregard a statement made by a defendant under the statute in their deliberations; but they must consider it in connection with the evidence in the cause, and give to it such weight, and only such weight, as its own inherent force, or corroborating proofs authorize.

3. *Same; defendants can not be examined or cross-examined.*—Defendants in criminal cases can not be examined by their counsel or cross-examined by the State, when they make their statements under the statute.

4. *Same; defendants can not be impeached.*—While the statements may be subjected to all the tests for ascertaining truth, which spring out of the proof in the cause, such as the consistency or probability *vel non* of the statements, the defendants' manner in making the statements, and the interest they must feel in the result, the defendants can not be impeached, as witnesses may be, by proof of bad character, by cross-examination, nor by any other proof of extrinsic facts, introduced for such purpose.—(SOMERVILLE, J., not expressing an opinion as to the right to impeach defendants by proof of bad character.)

APPEAL from Jefferson Circuit Court.

Tried before Hon. S. H. SPROTT.

At the spring term, 1883, of said court, Alvin Chappell, the defendant, was indicted for burglary, and at the same term was tried and convicted. On the trial, as shown by the bill of exceptions, "the defendant went on the stand and made a statement of the facts of the case in his own behalf. After he had finished his statement, his attorney asked him, whether he had ever claimed the property alleged to have been stolen, and which was lost from the house alleged to have been broken into and entered. He answered that he had made no such claim. The solicitor for the State then asked him, whether he had been convicted and sentenced to the penitentiary, and whether he had not worked out the sentence in the coal mine." This question he answered in the affirmative. The defendant, by his counsel, objected to the question and to the answer, but the court overruled both objections, and "allowed the said answer to go to the jury as evidence," and the defendant duly excepted. The foregoing is the substance of all that is contained in the bill of exceptions.

Name of counsel for appellant not disclosed by the record.

H. C. TOMPKINS, Attorney-General, for the State, cited *Hanroff v. The State*, 37 Ohio St. 178; *Brandon v. The People*, 42 N. Y. 265; *State v. Cohn*, 9 Nev. 179; *State v. Witham*, 72 Maine, 531.

STONE, J.—The present case raises a single question—the construction of the act approved December 2, 1882—Pamph. Acts, 4. By that statute it was enacted, "That on the trial of

[Chappell v. The State.]

all indictments, complaints, or other criminal proceeding, it shall be competent for defendants to make a statement as to the facts in their own behalf, but not under oath." What are the scope and interpretation of this statute? Its language should be first considered.

The statement is to be made without oath. In all civilized communities, some ceremony or solemn act is prescribed, as a condition precedent to giving testimony. In nations or states professing the Christian religion, there is an appeal to Almighty God, or an adjuration on the Holy Evangelists, that the testimony to be given shall be the truth. This is a most solemn recognition of an All-seeing, Omnipotent Ruler, who will reward or punish in this world, or the next, according to the deeds done in the body. This is the sanction which the law exacts, and imposes upon the conscience, before it permits a witness to testify.—1 Greenl. Ev. § 328. In fact, every instrumentality connected with the administration of the law, is required to be oath-bound. Such has been the law as far back as our knowledge of English jurisprudence extends.

In addition to the sense of Divine accountability acknowledged in taking an oath, human law has denounced severe punishment against him who bears false witness. Perjury is conspicuous as the most common of all the degrading offenses which fall under the generic name of the *crimen falsi*, because it is so easy of perpetration. It tends to contaminate the very fountains of justice; and hence, the solemn sanctions which legislation and immemorial usage have thrown around the giving of evidence, which is to shape the destiny of life, liberty and property. To overturn a principle so ancient, and so deepgrounded in our jurisprudence, should require clear and explicit language.

Defendants may make a statement of the facts in their own behalf. To state, is defined to be, "To express the particulars of, in writing or in words; to place in mental view, or represent all the circumstances of modification; to make known specifically; to explain particularly." Applying the words of the statute to the case it was intended to meet: The prosecution first places before the jury the criminating facts and circumstances. Then the accused produces his exculpatory testimony, if he have any. He may then make a statement as to the facts, if he elect to do so. That is, he may give his version of the particulars; he may represent all the circumstances of modification; he may make known, or explain particularly and specifically, "but not under oath."

What we have said above is but a plain exposition of the language of the statute. Statutes, somewhat resembling ours, are found in other States. In most of them the provision is,

[Chappell v. The State.]

that the defendant may make himself a witness in his own be-
half, and must be sworn.   In Michigan, unlike the statutes of
the other States, their enactment, like ours, gives to the de-
fendant the privilege of making a statement to the court or
jury, "and [he] may be cross-examined upon any such state-
ment."   Nothing is said about being sworn or not; and the
rulings under that statute are, that the statement of the pris-
oner is made without oath.—*Durant v. People*, 13 Mich. 351;
*People v. Jones*, 24 Mich. 215; *DeFoe v. People*, 22 Mich. 224;
*People v. Arnold*, 40 Mich. 710; see Code of Mich. 1871, Vol.
2, § 5967.

There have been many rulings on statutes similar to ours.   In
the case of *People v. Jones, supra*, the statement not being un-
der oath, the court expressed its view of the construction of
their statute, by approving a charge in the following language:
"To determine the guilt or innocence of the accused, you may
and should take into consideration all the facts and circum-
stances, as they appear to you from the proofs in the case.
And, in connection with all the other proofs in the case, you
have a right to take into consideration the statement of the
prisoner, and give it such weight and credit as you think it en-
titled to, under all the facts and circumstances of the case.
And you may give it more weight than the sworn testimony of
unimpeached witnesses, if, under all the facts and circum-
stances of the case, you honestly believe it entitled to such
weight; but in order to find what weight you ought to give to
his statement, you should consider whether it is consistent with
the other facts which may have been proven to your satisfac-
tion, and whether his statement is corroborated or not by other
proofs, facts, or circumstances of the case."   The Michigan
court, in its opinion, after approving the foregoing charge,
added:  "Such a statement, not being upon oath, and being
made under very strong temptation to favor himself, should be
subjected, at least, to all the scrutiny to which sworn testimony
is subject."   And in *People v. Arnold*, 40 Mich. 710, the same
court, in 1879, said:   "The law allows such weight to be given
to the statement [of the accused], as the jury may consider due
to it, and it can not be assumed by the judge, on submitting it,
that it is not to be believed; and hence it is not competent to
lead the jury to suppose that they may reject the facts given in
the statement, simply because they are not proved by others."
The Michigan statute, it will be remembered, allowed cross-
examination.

The Florida statute allowed the defendant to make a state-
ment on oath.   In *Miller v. The State*, 15 Fla. 577, and in
*Barber v. The State*, 13 Fla. 681, the court said:   "It is the
jury alone who are entitled to consider the statement, and if it

[Chappell v. The State.]

be remarked upon at all, it should be to suggest to the jury, in effect, that they are to attach to it such importance, in view of the nature of the offense charged, and of the testimony before them, as in their good judgment it is entitled to. It is for their consideration alone, and they may disregard it entirely. . . The defendant is entitled, when permitted to make the statement, to the benefit or disadvantage of such impression as he may be able to make upon the judgment of the jury."

We have not been able to find the Georgia statute in our library, but from a remark of the court in *Brown v. The State,* 60 Ga. 210, we infer the statement was to be made without oath. That court said: "The statute says the statement is to have such force only as the jury think proper to give it. Doubtless, the object of the statement is to enable the jury better to understand the testimony. Still, the effect which they think proper to give it is the effect which it is to have. O course, the jury should not lose sight of the terms of their oath. They swear to give a true verdict acrording to the evidence, and this they should do. . . As a general rule, sworn evidence must be more trustworthy than the prisoner's bare word." In the older case of *Ross v. The State,* 59 Ga. 248, the same court, in speaking of the same statute, had said: "We see no error in the charge that the statement of the prisoner was not evidence, but was entitled only to such weight as they chose to give it." So, in *Miller v. The State,* 15 Fla. 577, although the accused was required to make his statement on oath, the court ruled that he did not thereby become a witness.

The statutes of the other States generally make the accused a witness in his own behalf, if he choose to testify; and even the statute of Michigan, which required no oath, subjected the defendant, if he made a statement, to a cross-examination. *State v. Witham,* 72 Me. 531; *People v. Brown,* 72 N. Y. 571; S. C. 28 Amer. Rep. 183; *State v. Clinton,* 67 Mo. 380; S. C. 29 Amer. Rep. 506; *State v. Cohn,* 9 Nev. 179; *Hanoff v. The State,* 37 Ohio Stat. 178.

Recurring to our statute, copied above, we may well ask, why was the legislature so guarded in the language it employed. "Make a statement as to the facts in their own behalf, but not under oath," is the language of the statute. Witness, evidence, testimony are ignored, and oath is named only to be interdicted. If the legislature had intended to allow defendants to become witnesses, or their statements to become evidence, it was easy to say so, and we think it would have been said. We can not think such was their intention; at least, in a legal sense.

But, when we have reached this conclusion, we do not mean to say the jury can wantonly and capriciously disregard the

[Chappell v. The State.]

statement in their deliberations. They must consider it in connection with the evidence in the cause, and give to it such weight, and only such weight, as its own inherent force, or corroborating proofs entitle it to. It is, in its nature, more like an explanation or excuse any one may offer, in refutation of criminating facts and circumstances, proved against, or pointing to him. They rest on their own intrinsic merits, their probability, reasonableness, consistency with the facts in the case, proven to the satisfaction of the jury, or on corroboration, sustained by satisfactory proof. If they can not bear the test of close scrutiny, they should, as a rule, be disallowed. They are in the nature of testimony, but it should never be overlooked that they come from a deeply interested source, and unvouched by solemn oath. We think the language of the Supreme Court of Georgia, to the extent we have copied it above, truly expresses the scope and meaning of our statute.—*Blackburn v. The State, ante*, p. 319.

Defendants thus making statements, not being witnesses, nor their statements strictly evidence, it results,

First: That they are not subject to examination, or cross-examination, as witnesses are.

Second: While their statements may be subjected to all the tests for ascertaining truth, which spring out of the proof in the cause, the consistency or probability *vel non* of the statements made, the defendants' manner in making the statements, and the interest they must feel in the result, they can not be impeached, as witnesses are, by proof of bad character, by cross-examination, nor by any other proof of extrinsic facts, introduced for such purpose.

Statements under the statute are the subject of legitimate comment by counsel, in addressing the jury.—*Beasly v. The State, post*, p. 328.

The Circuit Court erred in allowing counsel either to examine, or cross-examine the defendant.

Reversed and remanded. Let the accused remain in custody until discharged by due course of law.

SOMERVILLE, J.—I concur in the conclusion reached that a defendant, in making his statement as to the facts in his own behalf, does not become a *witness* to all intents and purposes. If the General Assembly had intended this, nothing would have been easier than to have so declared in express terms. I also concur in the view that he can not be *examined as a witness* without his consent—this being really the sole question raised for our decision by the record. By making his statement he does not necessarily waive the privilege of refusing to criminate himself, which is a constitutional, as well as common law right.

[Beasley v. The State.]

If the right of cross-examination existed, as is expressly conferred by a similar statute in the State of Michigan, his appearance on the stand might very properly be construed as waiving this mere personal privilege.—*People v. Arnold*, 40 Mich. 710. Such are the rulings also under statutes authorizing defendants in criminal cases to testify as *witnesses* in their own behalf. *State v. White* (19 Kans. 445), S. C. 27 Amer. Rep. 137, *note*, 140. The specific question, as to whether or not it is permissible to weaken the statement of the defendant by proving him to be a person notoriously wanting in veracity, is one which does not arise in this case, and I prefer not to commit myself on it until it is presented for the decision of the court in proper form.