# Williams *v.* The State.

## *Indictment for Murder.*

1. *Statement by defendant.*—The " statement as to the facts," which the accused is permitted to make in his own behalf (Sess. Acts 1882-83, pp. 3-4), though not under oath, is in the nature of evidence, and should not be capriciously rejected by the jury, "though they may discard it as unworthy of belief, especially when it is in irreconcilable conflict with the testimony of disinterested witnesses under oath;" but the court has no power to disregard it, and is bound to consider its evidential tendencies in subsequent rulings on evidence.

2. *Bad character of deceased; when admissible as evidence.*—When there is evidence tending to establish that the defendant acted in self-defense, the character of the deceased as a turbulent, violent, and blood-thirsty man, is relevant and admissible evidence for him.

3. *Explanatory charges.*—When charges given announce correct principles of law, though " some of them are abstract and misleading, because not strictly relevant to the peculiar phases of the evidence, their misleading tendencies should have been corrected by counter charges requested by the defendant," and they present no reversible error.

From the Circuit Court of Butler.

Tried before the Hon. Jno. P. Hubbard.

The defendant in this case, Wesley Williams, was indicted for the murder of Walton McHenry, " by striking him with a rock, or with a stone, or with a brick-bat;" was tried on issue joined on the plea of not guilty; was convicted of murder in the second degree, and sentenced to the penitentiary for the term of sixteen years. On the trial, as the bill of exceptions shows, the State introduced several witnesses who testified to the circumstances of the killing, substantially as follows : The deceased and the defendant, with several other persons, were together at the store of one Davis in said county, on Christmas day, 1883, and were drinking, when they began " playing and knocking each other," as one of the witnesses expressed it. The deceased had an open knife in his hand, and as he threw up his arm to ward off a blow aimed at his head by the defendant, he cut the defendant in the fore-arm. " Defendant then said he would kill the deceased, and went and got a rail," which was taken away from him by some of the by-standers, while one of the others walked off with the deceased, towards

his house.. When the defendant was turned loose, he followed them, running, and overtook them, having picked up a rock, which weighed two or three pounds ; and while the man who was with the deceased was talking with him, just as the deceased turned away, he struck the deceased on the head with the rock, killing him in a few minutes. These witnesses stated that, after the cutting at the store, the deceased proposed to make friends with the defendant, " and made no demonstration or movement towards attacking the defendant;" and it was proved that they had been friendly up to that time. One of the witnesses for the State, however, stated that the deceased was lying on a bale of cotton near the store, " and called the defendant to him; that when the defendant got near, the deceased cut at him with his knife, but defendant jumped back ; that the deceased again raked at him with the knife, and cut him in the arm ; and that he (witness) then told defendant to go off, and he went up the road a piece." The defendant then proposed to prove by this witness, on cross-examination, "that he knew the general character of the deceased, in the neighborhood in which he lived, and it was that of a turbulent, blood-thirsty, and violent man." The court excluded this exidence, and the defendant excepted to its rejection. " The defendant then made his statement, which was, that when he went to Davis' store, on Christmas morning, the deceased was lying on a bale of cotton, and called him up to him ; that when he got up to him, the deceased cut at him with a knife, and cut his coat and shirt in the breast ; that he jumped back, and the deceased again cut at him with the knife, and cut him on the arm ; that he again jumped back, and Josh. Gilmore took the deceased away ; that the deceased, after he got a short distance off, called to him to come where he was ; that he went, but would not have gone if the deceased had not called him ; that when he got up to the deceased, the deceased cut at him, and he (defendant) then hit him with the rock, which he had picked up to keep the deceased from cutting him, and killed him; and he had no intention of killing the deceased at the time." The marks on his arm, and the cuts in the coat and shirt, were exhibited to the jury.. The defendant again proposed to prove the general character of the deceased " as a turbulent, blood-thirsty and violent man," and excepted to the ruling of the court in excluding the evidence. Several exceptions were also reserved to portions of the general charge given by the court, and to the refusal of several charges asked ; but it is not necessary to state these charges.

GAMBLE & RICHARDSON, for the appellant.

[Williams v. The State.]

H. C. Tompkins, Attorney-General, for the State.

SOMERVILLE, J.—The statutes of this State provide, that defendants, in criminal cases, may "make *a statement as to the facts*, in their own behalf, but not under oath."—Acts 1883–83, pp. 3–4. We have had occasion several times to construe this law, and have said that this statement, thus authorized to be made by any defendant, was "in the nature of evidence," and was subject to such intrinsic tests of credibility as ordinarily govern the sworn testimony of witnesses. It is settled, that the weight to which it is entitled by the jury, in reaching their verdict, is that which they see fit to accord it, in reason, justice, and conscience. It should not be capriciously rejected by them, without reason, notwithstanding the many inherent elements of weakness which so seriously affect its weight and credibility. Yet, for good and sufficient reasons, they may discard it as entirely unworthy of belief, especially when it is in irreconcilable conflict with the testimony of disinterested and impartial witnesses, who depose under the sanction of an oath.—*Blackburn v. The State*, 71 Ala. 319; *Chappell v. The State, Ib.* 322; *Beasley v. The State, Ib.* 328.

The statement made by the defendant upon the trial of this cause appears to be in direct conflict with the testimony of several witnesses who were examined, as to the circumstances of the alleged killing of the deceased by him. It was competent for the jury to discredit such statement, on this account, if they saw fit. The court, however, was not at liberty do so, but should have considered its evidential tendencies, as a statement of alleged facts, in all rulings upon the introduction of evidence offered subsequent to the making of the statement, or in connection with it. The *tendency* of this statement, however incredible the jury may have believed it to be, was to establish a case of self-defense on the part of the prisoner. If the jury had believed it, they might have acquitted the defendant, upon the theory of an excusable homicide. In this aspect of the case, it was error for the court to exclude the evidence offered as to the bad character of the deceased as "a turbulent, blood-thirsty, and violent man," at least when offered the second time, as it was, subsequent to, and in connection with the statement of the defendant.—*Johnson v. The State,* at present term; *Roberts v. The State,* 68 Ala. 156; *Ib.* 515; *Storey v. The State,* 71 Ala. 329; *De Arman v. The State, Ib.* 351; *Stokes' case,* 53 N. Y. 164; Cases Self-Defense (How. & Thomp.), pp. 486, 667, 641.

For the above error, the judgment of the Circuit Court must necessarily be reversed.

We have examined the charges given by the court, and those

refused to be given at the request of the defendant, and discover in these rulings no error for which the judgment is reversible. The charges given announce correct principles of law. If some of them are abstract and misleading, because not strictly relevant to the peculiar phases of the evidence, their misleading tendencies should have been corrected by counter charges requested by the defendant. The charges requested by the defendant, and shown to have been refused by the court, were all subject to obvious objections, which have so often been considered by us as not to require discussion.

The judgment is reversed, and the cause remanded for a new trial. In the mean while, the defendant will be retained in custody, until discharged by due process of law.