THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. CHARLES LANZO, DEFENDANT-APPELLANT.

Argued March 1 and 2, 1965—Decided June 1, 1965.

*Mr. William J. Gearty* argued the cause for appellant (*Mr. Thomas E. Durkin, Jr.,* attorney, and *Mr. Gearty* on the brief).

*Mr. John J. Francis, Jr.,* Assistant County Prosecutor, argued the cause for respondent (*Mr. Brendan T. Byrne,* Prosecutor of Essex County, attorney, and *Mr. Francis* on the brief).

The opinion of the court was delivered by

PROCTOR, J. Defendant, Charles Lanzo, was convicted of bookmaking (*N. J. S.* 2A:112-3) and of possession of lottery slips (*N. J. S.* 2A:121-3). He appealed, and we certified the matter before argument in the Appellate Division.

The defendant did not testify at the trial. The trial court, in the course of its charge to the jury, told them:

"Now, members of the jury, the defendant in this case did not take the stand. I charge you that under our law a defendant cannot be compelled to testify, but he is competent to testify and has the right to testify. His failure to be a witness in his own behalf raises no presumption of guilt, but if facts are testified to which tend to prove his guilt, which facts he could by his oath deny, his failure to testify in his own behalf raises a permissible inference—and you will remember my definition of inference—that he could not truthfully deny those facts."

The charge was authorized by this Court's opinion in *State v. Corby,* 28 *N. J.* 107, 117 (1958) and by *N. J. S.* 2A:84A-17(4).[1]

---

[1] The statute provides:

"If an accused in a criminal action does not testify after direct evidence is received of facts which tend to prove some element of the crime and which facts, if untrue, he could disprove by his own testimony, counsel and the judge may comment on his failure to testify, and the trier of fact may draw an inference that accused cannot truthfully deny those facts."

██ After the trial in the present case, the United States Supreme Court, in *Malloy v. Hogan*, 378 *U. S.* 1, 84 *S. Ct.* 1489, 12 *L. Ed. 2d* 653 (1964), overruled prior decisions by holding that the Fifth Amendment's privilege against self-incrimination is applicable to the states through the due process clause of the Fourteenth Amendment. At the oral argument before us, the defendant contended that *Malloy* prohibits the comment which *Corby* and the statute authorized. Thereafter, on April 23, 1965, the United States Supreme Court held "that the Fifth Amendment, in its direct application to the federal government and its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin v. State of California*, 85 *S. Ct.* 1229 (1965). As we read the opinion in *Griffin*, it clearly makes our rule in *Corby* and the statute which codified that rule unconstitutional.

██ The State, however, points out that the strategy of the defense throughout the trial was to persuade the jury that the evidence offered by the State was self-contradictory and absurd, and to imply that there was no point in the defense offering evidence to refute it. It argues that this constituted an explanation of the defendant's failure to testify which justified the court's comment. We disagree. It is clear from the record that the defendant was merely attempting to persuade the jury that the testimony of the State's witnesses was not sufficiently credible to warrant the jury in finding guilt beyond a reasonable doubt. This amounts to a comment on the evidence, not an explanation of defendant's failure to testify.

██ We held in *State v. (James) Smith*, 37 *N. J.* 481, *cert.* denied 374 *U. S.* 835, 83 *S. Ct.* 1879, 10 *L. Ed. 2d* 1055 (1962), that the rule announced in *Mapp v. Ohio*, 367 *U. S.* 643, 81 *S. Ct.* 1684, 6 *L. Ed. 2d* 1081 (1961), would be applied retroactively to cases then pending or on appeal. We see no reason why *Griffin* should not be likewise applied here. The conviction must therefore be reversed and a new trial

ordered. We, of course, express no opinion as to the applicability of *Griffin* to a collateral attack.

As the case must be retried, it is appropriate for us to consider defendant's remaining allegations of error. The defendant contends, on several grounds, that an unsigned written statement allegedly taken from him was erroneously admitted into evidence.

On February 7, 1961, at about 1:15 P.M., two police officers entered a luncheonette owned by the defendant's wife. The defendant was apparently in charge. The officers told him that they had received a bookmaking complaint and obtained his permission to search his person and the premises. A search of his person revealed an Armstrong sheet for that day. The telephone rang on two occasions, and when one of the officers, Detective Acocella, answered, both callers asked for "Charlie" and placed horse race bets. While at the telephone the detective found three slips of paper wedged between the telephone and the wall. The defendant immediately admitted that the slips were his. At the trial the detective identified two of these slips as horse race bets and the third as a lottery bet. At about 2:00 P.M. two other detectives arrived and the defendant was arrested and taken to police headquarters by Detective Acocella and his partner. The second two detectives remained to continue the search.

At police headquarters the defendant was interrogated and gave the police a statement. Before it was given, Detective Acocella told the defendant that he did not have to give a statement if he did not want to, and that if he did, it could be used against him. At first, the defendant denied that he was a bookmaker and claimed to be a mere bettor. However, after a number of questions and answers had been typed, the two detectives who had remained to search the luncheonette arrived with a large number of horse race and lottery bet slips, which they had found in the wall behind the telephone. The defendant abruptly changed his story and admitted writing numbers and accepting horse race bets. After the statement was completed, Detective Acocella read the entire

statement to the defendant and asked him if it was the truth. He replied that it was. He was then asked to sign the statement but he refused, saying that he wanted to see his lawyer. Detective Acocella testified that this was the first time that the defendant asked to see an attorney.

The above is a summary of the pertinent evidence produced by the State. As mentioned earlier, the defendant did not take the stand. Nor did he offer any other witnesses in his behalf.

The defendant first contends that Detective Acocella's testimony that the defendant acknowledged his statement to be true is inherently unbelievable. He argues that since the first part of the statement denies, and the second part admits that he was a bookmaker, the statement as a whole cannot be true, and therefore it is unreasonable to believe that he said it was true.

A voluntary, unsigned, out of court inculpatory statement of a defendant is admissible against him if it is read by or to him and he acknowledges its correctness. *State v. Donato*, 106 *N. J. L.* 397, 405–406 (*E. & A.* 1929). See also *State v. Cleveland*, 6 *N. J.* 316, 326–329 (1951). Although Detective Acocella asked the defendant if his statement "was the truth," it is clear that in the context in which the term was used the detective and the defendant understood that the second part of his statement was the truth. In these circumstances, we hold that the inculpatory second part of the defendant's statement was sufficiently authenticated to be admissible against him. As to the first part of the statement, *i. e.*, wherein he denied he was a bookmaker, the defendant cannot now complain of its admission since his counsel insisted that if the inculpatory part be admitted, the entire statement should be admitted. *State v. Dietz*, 5 *N. J. Super.* 222 (*App. Div.* 1949), relied upon by the defendant, is clearly distinguishable. There, unlike here, the accused's statement was neither read by nor to him, nor did he acknowledge its correctness.

The defendant next contends that the trial court erred in admitting his statement because it accused him of an independent crime. In the statement defendant was asked how long he had been writing numbers and he replied, "Just started a week Monday." The defendant argues that since he was indicted for the crimes of bookmaking and possession of lottery slips committed on February 7, 1961, the admission of this statement allowed the jury to consider that he had committed prior crimes. He argues that evidence of prior crimes introduced to show propensity to commit the crime charged is inadmissible, citing *Bullock v. State*, 65 *N. J. L.* 557 (*E. & A.* 1900). At the trial, after the court held that the State had authenticated the statement as that of the defendant, it asked his counsel if he wanted any particular section of the statement excised. Defense counsel responded, "My answer unequivocally * * * is no." Under these circumstances, the defendant is in no position to urge prejudicial error. Moreover, the questions and answers were admissible under a well-established exception to the general rule precluding proof of prior offenses. That exception permits evidence of prior crimes for the purpose of showing that the defendant had the specific intent or knowledge which is an element of the crime for which he is charged. *State v. Raymond*, 53 *N. J. L.* 260, 265 (*Sup. Ct.* 1891). In the present case the defendant was charged under *N. J. S.* 2A:121-3 with *knowingly* possessing lottery slips. The question of how long the defendant had been writing numbers was relevant to the issue of whether his possession of the slips was a knowing one.

The defendant, relying on *Escobedo v. State of Illinois*, 378 *U. S.* 478, 84 *S. Ct.* 1758, 12 *L. Ed.* 2d 977 (1964), next contends his statement was inadmissible because he was denied the assistance of counsel in violation of the Sixth Amendment to the Constitution of the United States.

The uncontroverted testimony of Detective Acocella was that prior to taking the defendant's statement, he advised him that he did not have to give a statement if he did not

want to. Also uncontroverted was the detective's testimony that the defendant made no request to consult a lawyer until after his statement had been completed, read and acknowledged. This court has repeatedly held that in the absence of a request to consult with an attorney, an accused's right to counsel during a police interrogation has not been denied. See *State v. Bindhammer*, 44 *N. J.* 372 (1965); *State v. Hodgson*, 44 *N. J.* 151 (1965); *State v. Vigliano*, 43 *N. J.* 44, 49–52 (1964); *State v. Smith*, 43 *N. J.* 67, 83–84 (1964), *cert.* denied 379 *U. S.* 1005, 85 *S. Ct.* 731, 13 *L. Ed.* 2d 706 (1965).

The defendant has made no contention that his statement was involuntary. We conclude that, in light of the above reasons, his statement was properly admitted in evidence.

The judgment of conviction is reversed and the cause is remanded for a new trial.

*For reversal* — Chief Justice WEINTRAUB, and Justices JACOBS, PROCTOR, HALL, SCHETTINO and HANEMAN—6.

*For affirmance*—None.