223 So.2d 597

John Allen PADGETT

v.

STATE.

4 Div. 654.

Court of Appeals of Alabama.

Feb. 11, 1969.

Rehearing Denied March 4, 1969.

Smith & Smith, Dothan, for appellant.

MacDonald Gallion, Atty. Gen., and Richard F. Calhoun, Asst. Atty. Gen., for the State.

CATES, Judge.

Padgett has appealed from a judgment of conviction of grand larceny. The trial judge sentenced him to five years imprisonment.

## I.

### Facts from Appellant's Brief

Sam Etheridge, an employee of the City Tire Company, Dothan, on March 15 around 2:00 P.M., saw Padgett in the City Tire Company lower warehouse.

Willie Peoples testified that he was working at City Tire Company on March 15. He saw Padgett driving a 1965 Ford station wagon down the driveway between City Tire Company and Danley Furniture Company, park on the Danley side and went into the lower warehouse of City Tire Company.

Walter Powell testified that he was an employee of City Tire Company. When he went to unlock the warehouse on the morning of March 16, his key would not fit the lock but that it did fit the lock which was on the closure the night before.

Ben Woodham testified that the key would not fit the lock at City Tire Company on the morning of March 16; that he took inventory and found several items (20 truck tires worth $1812.00) missing.

Fred Martin operated Martin's Pure Service Station. March 16 about 6:00 A.M. the defendant brought back a trailer to his service station that he had gotten during the night of March 15. Padgett told him that no one was there to rent him a trailer so he just took one. He paid for the use of the trailer.

Henry Hilson worked at Martin's Service Station. He smelled rubber inside the trailer that Padgett had returned; that he suspected the defendant after he heard about all those tires being missing the night before.

Eudon Smith was a police officer for the City of Dothan and a part-time employee of Martin's Pure Service Station. He saw the tire marks on the sides and bottom of the interior of the trailer.

Art Habbard was a detective for the City of Dothan. He assisted the sheriff, deputy sheriff and other officers in the search of Padgett's car on March 17. On voir dire he testified that he did not get a search warrant but that either Lt. Deal or Albert Hicks got one.

Lt. Deal was called to the stand on voir dire examination. He secured a search warrant from Judge Farmer on March 17 around 9:00 A.M., and that he listed in the affidavit a number of articles with their serial numbers. He testified that Detective Dillard gave him the serial numbers.

Detective Dillard was called by the defense on voir dire. He gave Lt. Deal a list of items to go into the search warrant; that he got the list from the offense report from Seay Radio & TV Sales and Service. He testified that before that he got the items out of Padgett's car in connection with another case.[1]

On cross-examination Dillard testified that some of the items were visible to him through the window. Reports had already been received by him that some goods were stolen. Padgett permitted him to look into the car. Mr. McKinnon from Signal Supply came down and identified some of the items. Dillard testified that later he did not make a thorough search of the car but that he took some of the items out of the car that were identified as some one else's property. The next morning the search warrant was obtained. On re-direct, Dillard testified that defendant opened the car door on the night of March 16 and the next day Lt. Deal got a search warrant.

Defendant then objected. We quote from the record:

"THE COURT: Anything further on Voir Dire?

"MR. SMITH: We object to any material that came out of that automobile that night, as well as this search warrant, because it was clearly shown that the car had already been searched at the time that the Defendant went into the car, and this search warrant was premature, its already been taken out later on after they had already searched the car; and there has been an illegal search, and we move to suppress all evidence taken from John Padgett's car on the night of the 16th or the day of the 17th, or any other day as a result of this illegal search.

"THE COURT: And I overrule your motion.

"MR. SMITH: Reserve an exception.

"THE COURT: Let the Jury come."

Art Habbard testified that he was a detective for the City of Dothan and that he participated in the search of a 1965 Ford station wagon on the morning of March 17. He identified Exhibit One which was a lock that came off the door at City Tire Company. Habbard also found behind the left front seat a padlock exactly like Exhibit One.

Detective Dillard testified that he was a detective for the City of Dothan and was on duty on March 15, 16, and 17. He saw Padgett eating in the City Cafe and later saw him in a 1965 Ford station wagon. He identified Exhibit Two as being a key that came out of defendant's pocket at the police station on March 16. He later tried the key on the lock that was on the City Tire Company warehouse and that the key unlocked the lock which was State's Exhibit One which was on the warehouse on the morning of March 16.

A. B. Clark testified that he was the Sheriff of Houston County, Alabama. On March 17 he searched a 1965 Ford station wagon and that Lt. Deal, Deputy Skipper, and Art Habbard assisted him with the search. He listed items on his return, presumably to the search warrant.

1. Padgett v. State, 44 Ala.App. 548, 216 So.2d 187.

Ben Woodham, recalled, testified that City Tire Company was located at 207 West Main Street, Dothan.

The State rested.

Defendant made a motion to exclude the evidence which the court denied. Defendant rested his case without bringing in evidence.

## II.

### Searches

There were two searches of Padgett's station wagon: the first without a warrant, the second with a warrant. The first occurred at the police station on the night of the 16th where Padgett's car was parked with all doors and windows locked. Padgett had just been arrested after he had driven there himself at the invitation, if not sterner behest, of the police.

Detective Dillard called Padgett's attention to "stolen stuff that was visible in his car." He asked Padgett if he would mind unlocking his car and "he said he would not."

After Padgett had unlocked the car, Dillard picked up some articles which were in plain view through the window. One of these was a "Houster" radio antenna which Mr. McKinnon from Signal Supply identified as having been taken from that establishment.

The intangible right of ownership (i. e., title or (roughly speaking) the right to possession) is incapable of transfer by theft. Restatement, Restitution, § 128. The owner of personalty (with the right of immediate possession) may peaceably recapture it wherever found. Stowers Furniture Co. v. Brake, 158 Ala. 639, 48 So. 89; Webb v. Dickson, 276 Ala. 553, 165 So.2d 103.

Thus it was that with the true owner pointing out his own property in plain view in Padgett's station wagon, Lt. Dillard as a public servant was the owner's agent to assist, so long as a breaking into the car was not needful to the repossession. In this agency he was reasonable in asking Padgett to unlock.

Unlike the circumstances in York v. State, 43 Ala.App. 54, 179 So.2d 330, here stolen property (quasi-contraband as to Padgett) was openly visible and had been identified by its true owner. To have the car open was but to reinforce an already known fact.

Implicit within the State's burden to show that a warrantless search was reasonable, Duncan v. State, 278 Ala. 145, 176 So.2d 840, and Knox v. State, 42 Ala.App. 578, 172 So.2d 787, would be embraced in the corollary duty to show that consent of a prisoner to a search after arrest was free from coercion. State v. King, 44 N.J. 346, 209 A.2d 110; Anno. 9 A.L.R. 3d 858.

Insofar as this first search led to probable cause to seek the warrant used the next day with the discovery of Padgett's own padlock as a collateral incident to a more thorough search for additional stolen goods, we consider it to have been reasonable on the instant record.

The consent seems to us to have been voluntary: (1) that the car had stolen goods was known to the officer (and Padgett inferably) when Padgett was asked to open the car, hence the issuance of a warrant was ineluctable; (2) Padgett himself acted to unlock; (3) there was an absence of deceit or trickery; and (4) the request was made and consent given presumably almost simultaneously with Padgett's being arrested before interrogation, if any.

The second search the next day with a warrant should not be tainted by any finickiness as to the procedure on the night of the 16th. The second search uncovered the padlocked which was identified with the one left at the tire company

(Exhibit One), and to which Padgett had the key on his person (Exhibit Two). See Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782.

All of the foregoing was adduced outside the presence of the jury. The jurors only received evidence that on the second search (with a warrant) Habbard found the matching padlock.

We find no error even though the padlock was not listed on the warrant. It seemingly was Padgett's property and like the clothing in *Hayden,* supra, furnished a clue which linked Padgett to the crime.

■ Its introduction in evidence was without error.

### III.

■ The motion to exclude the State's evidence for failure to make out a prima facie case was properly denied.

### IV.

During the district attorney's closing argument to the jury, the court reporter's transcribed notes show:

"MR. SMITH: We object to the inference to the stand, [sic] (statement?) 'Did anybody tell you under oath from the stand that John Allen Padgett didn't put that lock up there, et cetera.' We object to those remarks.

"THE COURT: I think that is argument within the line of testimony."

First, the record shows no other remarks of defense counsel. Also, we note that the district attorney made no justification of the remark as being reasonably and logically evoked by argument of opposing counsel. Second, the trial judge gave as his reason for overruling objection that the remark was within the scope of the evidence, i. e., a legitimate inference.

Accordingly, we consider that justification under the latitude of the "reply in kind" exception is not presented on this record.

Moreover, the State's whole theory was that Padgett broke and entered, took the tires, and replaced the original padlock with one he carried. This replacement no doubt was designed to hinder or delay discovery of the abstraction of the tires.

Code 1940, T. 15, § 305, provides in part:

"On the trial of all indictments, complaints, or other criminal proceedings,. the person on trial shall, at his own request, but not otherwise, be a competent witness; and his failure to make such a request shall not create any presumption against him, nor be the subject of comment by counsel. * * *".

This section came into our law by stages. Historically, at Common Law the defendant could not be a witness in his own behalf. Then, in 1882, by Act No. 3 (p. 4), approved December 2, 1882, the Legislature gave the defendant the privilege of making an answorn statement to the court and. jury. See Blackburn v. State, 71 Ala. 319; Chappell v. State, 71 Ala. 322; Beasley v. State, 71 Ala. 328, 329; Burke v. State, 71 Ala. 377; Whizenant v. State, 71 Ala. 383; and Williams v. State, 74 Ala. 18. Also, Jones v. State, 181 Ala. 63, 61 So. 434; 1 Mayfield Dig., Witnesses, Competency 3, p. 882; Wigmore, § 579, n. 6; Ferguson v. Georgia, 365 U.S. 570, 81 S.Ct. 756, 5 L.Ed.2d 783.

After amendment to present form, Code 1940, T. 15, § 305, Act No. 3, was repealed. Act No. 80, approved February 17, 1885.

Under Washington v. State, 259 Ala. 104, 65 So.2d 704, Welch v. State, 263 Ala. 57, 81 So.2d 901, and Taylor v. State, 279 Ala. 390, 185 So.2d 414, § 305 is read literally, i. e., covert references are construed against the defendant. In other words, no matter what the jury might. infer, there must virtually be a direct. identification of the defendant alone as. the individual who has not become a witness. Earlier cases to the contrary apparently must be viewed askance. See Williams v. State, 43 Ala.App. 343, 190 So.2d 556, and the border line case of

White v. State, 44 Ala.App. 312, 208 So.2d 222.

We concede that these authorities are at variance with the interpretation of Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 and Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, as applied in State v. Chasse, 4 Conn. Cir. 276, 230 A.2d 51. The Court of Appeals of Kentucky, however, in Foster v. Commonwealth, Ky., 415 S.W.2d 373, held to the contrary that, "No witness has taken the stand to deny," was not within the influence of *Griffin,* supra.

Yet, in Desmond v. United States, 345 F.2d 225, 14 A.L.R.3d 718, we find the First Circuit reversing because of argument, " * * * 'the evidence stands unimpeached and uncontradicted.' * * * We can think of no effect other than to invite the jury's attention to the fact the defendants had not taken the stand."

We quote from State v. Sinclair, 49 N.J. 525, 231 A.2d 565:

"Defendant Sinclair argues that the comments of the prosecutor in his summation that Friedman's testimony about the events in his store was 'uncontradicted' infringed upon his Fifth Amendment privilege against self-incrimination. He contends that the jury, because of the prosecutor's comments, would likely be led into drawing an inference of guilt from his failure to take the stand.

"The prosecutor has the right to make fair comment on the evidence and to argue to the jury the significance of the testimony presented, but when he begins to discuss the significance of what testimony was not presented and if it does not clearly appear that persons other than defendant could have been called, there is a danger that he may reflect upon a defendant's Fifth Amendment right to remain silent. See Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) and State v. Lanzo, 44 N.J. 560, 210 A.2d 613 (1965). Every time a prosecutor stresses a failure to present testimony, the facts and circumstances must be closely examined to see whether the defendant's right to remain silent has been violated. See State v. Pickles, 46 N.J. 542, 579, 218 A.2d 609 (1966). We do not mean to preclude the legitimate inferences from non-production of evidence to which the prosecutor may fairly refer. [Omitting authorities.] However, in the present case we think that the repeated remark that Friedman's testimony was 'uncontradicted'—in view of the testimony showing that only Sinclair and his codefendant could deny the testimony of Friedman—did raise a danger that the jury would draw an improper inference from Sinclair's failure to take the stand. Therefore, at the retrial if these same circumstances recur, the prosecutor should refrain from arguing that Friedman's testimony about the events in his store was uncontradicted. * * *"

Under the principle of Street v. State, 266 Ala. 289, 96 So.2d 686, we think that under the undisputed evidence Padgett could have been the only witness to have denied that he put the padlock on the gate. Anno. 14 A.L.R.3d 723, § 4.

Under Chapman v. California, supra,[2] we are precluded from consigning this remark to harmless error.

Griffin v. California, supra, has taken over § 305, supra, and even perhaps overturned Broadway v. State, 257 Ala. 414,

---

2. We forego speculation as to whether the Federal formula in *Chapman* and Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171, leans more to the old Baron Parke's presumption of injury from error than Alabama Supreme Court Rule 45. Cf. "Reasonable possibility that * * * might have contributed," or "harmless beyond a reasonable doubt," versus "probably injuriously affected substantial rights." See Purdom, Case note, 45 N.C.L.Rev. 1044; Case note, 20 Vand. L.Rev. 1157.

**62**

60 So.2d 701. See Chapman v. California, supra; O'Connor v. Ohio, 385 U.S. 92, 87 S.Ct. 252, 17 L.Ed.2d 189; Gordon v. State, Fla., 104 So.2d 524, at 540; Case note 34 Tenn.L.Rev. 696.

■ Hence, under Street v. State, supra, we must reverse the judgment below and remand the cause there for a new trial.

Reversed and remanded.