Appellant was convicted of robbery and sentenced to imprisonment for ten years.
The indictment was as follows:
 "The Grand Jury of said county, charges that before the finding of this indictment Lamar Smith, alias Ricky Hill, whose name to the Grand Jury is otherwise unknown, feloniously took $100.00 in lawful money of the United States of America, of the value of $100.00, the property of Roosevelt Allen, from his person, and against his will, by violence to his person, or by putting him in such fear as unwillingly to part with the same, against the peace and dignity of the State of Alabama."
According to the undisputed evidence, on the night of February 18, 1976, two men entered a room at the men's dormitory at Miles College and robbed the only occupant *Page 314 
thereof at the time, Roosevelt Allen, of one hundred dollars in currency. One of the robbers was identified as defendant. The other robber was a "guy named Soap." Both of the robbers had guns. One of them slung at Allen and told him "to sit on the bed and put the gun to my head, and put the — told me to act like a hero and he would shoot me." Allen complied by sitting on the bed and not offering any resistance. One of the robbers had asked him where his roommate, Douglas Bryant, was. The robbers proceeded to go through the drawers of the furniture in the room; they tried to open the trunk but couldn't get it open; they found the one hundred dollars in his roommate's desk drawer; the money belonged to Allen's roommate, Douglas Bryant. The robbers searched the room thoroughly and left it in great disarray. Before they left, Allen's roommate, Douglas Bryant, entered the room. The robbers required him to pull off his clothes, and about that time Victor Cunningham and a man called "K-Dog" came in. The robbers told Victor and K-Dog to take off their clothes, which they did, after Victor was hit "up side the head with a pistol" by one of the robbers. There was then some noise in the hall made by some football players, and the robbers left the room with the money, the one hundred dollars, that had been taken from the drawer. The robbers left the dormitory running and fired a pistol or pistols about three times as they were about to cross over a fence.
After leaving the campus, "They got in the car and they ran in a ditch. And, they got out and started running." They were soon thereafter apprehended.
The unique feature about the case is that, under defendant's plea of not guilty, there was apparently no effort made by defendant to show that there had not been a robbery of Roosevelt Allen by taking property from his person, or in his presence, but, according to the statement of his counsel, marijuana, not money, was taken. His counsel said:
 "MR. JACKSON: Judge, this is the whole defense that this man was being framed — what they said was robbery, when in fact some marijuana was taken."
In support of the claim of defendant that marijuana, instead of one hundred dollars in money, was taken, defendant offered the testimony of two witnesses to the effect that Douglas Allen[1] had stated after the alleged robbery that marijuana, instead of money, was taken. One said:
 "And, he said one hundred dollars worth of reefers. But, he said he was going to tell the police he took one hundred dollars in cash."
The other witness said:
 "A He told me that he — my cousin stole one hundred dollars worth of his stuff. He was talking about reefers.
"Q About what?
"A Reefers, marijuana.
"Q Did he say what he was going to say was stolen?
 "A He said he was going to press charges that he stole one hundred dollars."
In furtherance of defendant's "defense," his counsel showed on cross-examination of State's witnesses that nothing was taken from any of the persons in the room while the robbery was taking place or from any of the furniture or furnishings in the room, other than what the alleged victim of the robbery said was taken from the drawer of the desk of his roommate.
Notwithstanding defendant's failure to take the stand, we understand from the record before us that the pivotal issue of fact between the parties was whether the property taken was the one hundred dollars, as testified by the alleged victim, or marijuana as contended by defendant.
 "The evidence must show a taking of some property answering substantially to that described in the indictment or information as taken." 77 C.J.S. Robbery § 44b (1) *Page 315 
Except as to the value of the property, which can become material in a larceny case so as to distinguish between grand larceny and petit larceny, the description of the property in an indictment for robbery is as material as in an indictment for larceny. In Hammac v. State, 44 Ala. App. 459, 212 So.2d 849
(1968) it was held:
 "In a prosecution for larceny the proof must correspond with the description of the identical thing alleged in the indictment to have been taken. The court erred in denying the defendants' motion to exclude the state's evidence on the ground that the description of the property was not proved as charged in the indictments. Morris v. State, 97 Ala. 82, 12 So. 276; Smith v. State, 30 Ala. App. 158, 2 So.2d 341; Wright v. State, 52 Ga. App. 202, 182 S.E. 862; Wilson v. State, (1956) 93 Ga. App. 375, 91 S.E.2d 854."
The verdict of the jury was well supported by the evidence that the property described in the indictment was taken, but evidence to that effect was not so conclusive as to preclude a verdict of not guilty based on a variance between the indictment and the evidence as to the identity or description of the property actually taken.
In the court's oral charge there was no particularization of the only controverted issue in the case, namely, that of the identity or description of the property. No charge was given that the description of the property was a material averment of the indictment and that the jury could not convict unless it was satisfied from the evidence beyond a reasonable doubt that the property as described in the indictment was taken. The nearest to such an instruction is in the following portion of the charge:
 "Now, it is necessary for the State to prove to the jury beyond a reasonable doubt and from the evidence that Roosevelt Allen, either owned the property described in the indictment or that it was under his personal protection and control, and he was in lawful possession of it by consent of the owner of such property."
The following written charge requested by defendant was refused:
 "If you find from the evidence that the Defendant did not feloniously take $100[00] in lawful money of the United States of America of the value of 100[00]
property of Roosevelt Allen from his person, and against his will, by violence to his person, or by putting him in such fear as unwillingly to part with the same, you must acquit the Defendant."
The charge should have been given. In Hamilton v. State,147 Ala. 110, 41 So. 940 (1906), a larceny case, it was held that instructions hypothesizing the description of the money allegedly stolen in counts of the indictment, and requiring that the defendant could not be convicted as to such counts unless the proof showed that the money stolen was in whole or in part the kind of money described in the indictment, were improperly refused.
 "Charge No. 2 [asked] by defendant should have been given. It hypothesized the material allegations of the indictment as necessary to be shown beyond a reasonable doubt, before the jury could find the defendant guilty." Crane v. State, 111 Ala. 45, 20 So. 590 (1895).
Notwithstanding the natural aversion to the acquittal of a defendant on a charge of having robbed another of, or stolen from him, property of a particular description when the evidence shows that he did steal from, or rob another of, property other than that described in the indictment, the law so requires. As a matter of law appellant was entitled to be protected against a conviction on a finding by the jury that property was taken from the alleged victim under circumstances that would constitute robbery but that the property taken was not the property described in the indictment. We find nothing in the record to show that the jury was ever instructed in accordance with that principle.
One of the last paragraphs of the court's oral charge was as follows:
 "Now, during the course of this trial, the defendant has not testified during the course of this trial. I instruct you that no inference can be drawn from this fact. The defendant has a right under our *Page 316 
Constitution not to be compelled to be a witness against himself."
At the conclusion of the court's oral charge, the following occurred:
"[THE COURT] Are there any exceptions?
"MR. SHIELDS: No exceptions.
 "MR. JACKSON: We except to the part of the jury charge regarding failure of the defendant to testify.
"THE COURT: Overruled.
"MR. JACKSON: We except.
"THE COURT: Mr. Alternate Juror, you can be excused.
 "(WHEREUPON, THE JURY RETIRED TO THE JURY ROOM TO DELIBERATE AT 4:27)."
We think the quoted portion of the court's oral charge was erroneous.
There is a conspicuous lack of uniformity among the American courts as to whether the trial court should instruct the jury as to defendant's failure to take the stand in the absence of a request by defendant for such instruction. 75 Am.Jur.2d Trial
§§ 775-778. In § 777 it is stated:
 "There has been a conflict of authority as to whether it is proper under the Griffin[2] rule for a trial judge, without having been requested by the accused, to instruct the jury that no inferences should be drawn against the accused because of his failure to testify. Some cases have held that since the Griffin decision expressly prohibits only an instruction by the trial judge that the accused's silence is evidence of guilt, and since the Griffin rule is intended to prevent only those instructions which authorize the jury to draw adverse inferences from the accused's failure to testify, it is proper for the trial judge, even if the accused does not so request, to instruct the jury that no inferences should be drawn against the accused because of his failure to testify. . . . On the other hand, it has been held that since the main purpose of the Griffin rule is to give the fullest possible meaning to the accused's constitutional privilege not to testify, the accused should have the right to decide whether or not his failure to testify should be mentioned to the jury by anyone, and that since any instruction which calls the jury's attention to the fact that the accused has not testified, regardless of how favorably to the accused the instruction may be worded, will necessarily highlight, emphasize, or single out the fact of the accused's failure to testify and may inadvertently cause the jurors to consider certain adverse inferences which would not otherwise have entered their minds, such an instruction should not be given unless the accused requests it. Where the giving of such an instruction has been considered error, such error has been held to warrant the reversal of the accused's conviction. In some cases, the courts without expressly stating either that there was no error or that error was committed but without prejudicial effect, have apparently grouped the issues of propriety and prejudicial effect together and have held simply that it did not constitute reversible error for a trial judge, in the absence of a request by the accused, to instruct the jury that no inferences should be drawn from the accused's failure to testify."
By Blakely v. State, 43 Ala. App. 654, 198 So.2d 803 (1967), this Court is committed to the proposition that a trial court's inclusion in its oral charge of a reference to failure of a defendant to testify in the case does not necessarily constitute error, even though the allusion to his not testifying was made without defendant's request and contrary to his expressed desire. Blakely was a burglary case, in which the trial court said in its oral charge:
 "`The defendant in this case has not seen fit to take the stand in his behalf and the Court charges you that he is not required to take the stand and it is not to be used as evidence against him; we don't have *Page 317 
to prove ourselves innocent; the State has to prove you guilty, under our system of the law, and I can't urge this too strongly — you are not to consider against him the fact that he did not testify in his own behalf'."
It was held in Blakely:
 "Code 1940, T. 15, § 305, inter alia, forbids the District Attorney's commenting on the defendant's failure to exercise his statutory right to testify. This prohibition does not in its terms prevent the judge from charging the jury as Judge Mashburn did here. Indeed, we commend his instruction."
It is to be noted that in Blakely the commendation was as to the particular instruction given, not as to the giving of an unrequested instruction on the subject. It is to be further noted that the instruction given was about as strong and favorable to defendant as any conceivable proper instruction on the subject. This emphasizes the fact that the principle of law involved is one that is for the protection of defendant.
The statutory law on the subject is Code Ala. 1975, §12-21-220:
 "On the trial of all indictments, complaints or other criminal proceedings, the person on trial shall, at his own request, but not otherwise, be a competent witness, and his failure to make such a request shall not create any presumption against him nor be the subject of comment by counsel. If the District Attorney makes any comment concerning the defendant's failure to testify, a new trial must be granted on motion filed within thirty days from entry of the judgment."[3]
As the principle involved is one for the protection of defendant, we can well understand the expressed view of many courts to the effect that there should be a trial court caveat to the giving of an instruction on the subject in the absence of a request by defendant. Some appellate courts have strongly expressed the view that it is better practice not to instruct the jury on the subject of the failure of defendant to testify unless requested to do so by defendant. Such view is worthy of serious consideration, whether we agree with it or not. The view has been emphatically expressed in several cases, including State v. Emrick, 129 Vt. 330, 278 A.2d 712 (1971);State v. Wallace, 261 Iowa 104, 252 N.W.2d 266 (1967) and Statev. Davis, 294 N.C. 397, 241 S.E.2d 656, 660 (1978), wherein it was said:
 ". . . While it is better practice for the court not to instruct on defendant's failure to testify, State v. Covington, 290 N.C. 313, 226 S.E.2d 629 (1976), it is entirely proper to give the instruction upon defendant's request. . . ."
We note no disagreement among the authorities with the principle that should the trial court, in the absence of a request of the defendant, charge the jury as to defendant's failure to testify, the charge should give defendant full benefit of the principle that no inference adverse to him should be drawn from his failure to testify.
In the trial court's reference in its oral charge to the failure of defendant to testify, there was included the statement, "that no inference can be drawn" from the fact that defendant had not testified, but this, in our opinion, was a de-emphasis of the protective principle that the inference that is not to be drawn is an inference unfavorable to defendant. This is made even clearer by the last statement of the court on the subject, "The defendant has a right under our Constitution not to be compelled to be a witness against himself."
The statement as to "no inference" in the instruction is subject to a reasonable construction by the jury, unacquainted with the refinements of the law on the subject, that no inference unfavorable to the State could be drawn from the failure of the State to have defendant testify as to his guilt or innocence. The statement as to *Page 318 
defendant's constitutional right could have been reasonably construed as implying that if defendant had testified, he would have testified "against himself."
To equate the right against self-incrimination guaranteed by the Fifth Amendment and the right of a defendant in a criminal case to elect whether he will testify in the case is to truncate both rights. The one goes beyond the perimeter of a case in which the beneficiary of the right is a defendant; the other extends beyond the boundary of self-incrimination. The one is not always self-invocative. The other always is. The two are progenies of different sires. Although there is some relation between the two rights, they are cousins at the best.
 "This section [Ala. Code 1975 § 12-21-220] came into our law by stages. Historically, at Common Law the defendant could not be a witness in his own behalf. Then, in 1882, by Act No. 3 (p. 4), approved December 2, 1882, the Legislature gave the defendant the privilege of making an unsworn statement to the court and jury. See Blackburn v. State, 71 Ala. 319; Chappell v. State, 71 Ala. 322; Beasley v. State, 71 Ala. 328, 329; Burke v. State, 71 Ala. 377; Whizenant v. State, 71 Ala. 383; and Williams v. State, 74 Ala. 18. Also, Jones v. State, 181 Ala. 63, 61 So. 434; 1 Mayfield Dig., Witnesses, Competency 3, p. 882; Wigmore, § 579, n. 6; Ferguson v. Georgia, 365 U.S. 570, 81 S.Ct. 756, 5 L.Ed.2d 783.
 "After amendment to present form, Code 1940, T. 15, § 305, Act No. 3, was repealed. Act No. 80, approved February 17, 1885." Padgett v. State, 45 Ala. App. 56, 223 So.2d 597 (1969)
On the same subject, Justice Bouldin in Turner v. State,238 Ala. 352, 354-355, 191 So. 396, 398 stated:
 "It is fair to assume all these matters were in the mind of the law makers when framing this carefully worded statute. Their aim was to abolish the rule which compelled the accused to sit dumb before his accusers, to enable him, at his election, to give his version of the affair, to present facts, maybe known to him alone, tending to show freedom from guilt, or to mitigate the offense made out, in many cases, by adversaries highly interested. Many reasons, other than admission of the State's evidence, may, under advice of counsel, influence the election not to testify."
We have some reservation as to the sufficiency of the exception taken by defendant to the instruction of the court. We conclude that it was sufficient under the circumstances.
 "It is sufficient that the exception substantially recite the instruction to the extent of informing the court of the portion of the instruction excepted to. Kelley v. State, 226 Ala. 80, 145 So. 816; Brewington v. State, 19 Ala. App. 409, 97 So. 763; Brown v. State, 17 Ala. App. 30, 81 So. 366; Ex parte Cowart, 201 Ala. 55, 77 So. 349.
 "The exception was in our opinion sufficient to direct the lower court's attention to that portion of the court's instruction to which appellant was excepting. . . ."
We would be more concerned about the sufficiency of the exception if any part of the instruction to which the exception was taken were properly given. As indicated above, if an instruction as to the failure of the defendant to testify is given, without its being requested by defendant, it should set forth completely and clearly as possible the protective feature to defendant of the principle. Neither the instruction to which the exception was taken nor any part of it did so.
During the argument of counsel for the prosecution, the following occurred:
 "MR. SHIELDS: They didn't deny they were robbed. The only defense is some sort of defense that we robbed them of dope and not of money. I don't believe that from the —
"MR. JACKSON: Judge, I'm going to object.
"THE COURT: Overruled. *Page 319 
 "(Whereupon, Mr. Shields addressed the jury in closing argument on behalf of the State during which the following occurred:)
 "(Whereupon Mr. Shields and Mr. Jackson approached the bench and a conversation was had out of the presence of the jury:)
 "THE COURT: Ladies and Gentlemen, the last statement of counsel where he stated that they did not deny that they were there, did not deny that they robbed, I ask that you exclude that from your mind and not consider that in your deliberations. I ask you to erase that from your minds and not consider it when you arrive at your verdict.
 "MR. JACKSON: Judge we would like to move for a mistrial on the grounds we feel it would be impossible for the jury to erase that from their minds.
"THE COURT: Overruled."
Appellant urges as a ground for a reversal the action of State's counsel and the trial court as above narrated, insisting that the argument of State's counsel amounted to an improper comment upon the defendant's failure to testify. We do not agree with appellant in this particular. Although the particular argument is ambiguous by reason chiefly of uncertainty of the identity of the persons for whom the personal pronoun "they" was twice used, it seems to us that counsel was referring by the first "they" to defendant and "Soap" and by the second "they" he was referring to the alleged victim of the robbery and his roommate. It appears, however, that counsel for both sides and the court came to an understanding that perhaps the particular argument referred to the failure of defendant to testify. Whether such understanding was correct or not, it may well have tended to prompt the trial judge, in a commendable desire to prevent injustice to defendant by reason of his failure to testify, to caution the jury on the subject. This being true, we commend him for his effort, but think that it did more harm than good, much harm and no good, to defendant.
Our conclusions as stated above make it unnecessary for us to pass upon appellant's other contentions for a reversal.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under the provisions of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328). His opinion is hereby adopted as that of the Court.
REVERSED AND REMANDED.
All the Judges concur.
[1] The witnesses said "Douglas Allen" but the context of the testimony indicates that they were referring to Douglas Bryant. As no one has explained this discrepancy, we will treat it as an overlooked error in the name.
[2] Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229,14 L.Ed.2d 106, reh. den. 381 U.S. 957, 85 S.Ct. 1797, 14 L.Ed.2d 730.
[3] The last sentence is not to be given the mandatory effect which its language imports. To do so would violate the Separation of Powers Section (§ 43) of the Constitution of Alabama. Broadway v. State, 257 Ala. 414, 60 So.2d 701.